■ CHAYA LIPTON, an Infant, by RACHEL LIPTON et al., Her Parents and Natural Guardians, et al., Respondents, v ROBERT KAYE et al., Defendants, and NEW YORK HOSPITAL et al., Appellants. [624 NYS2d 590] —Order of the Supreme Court, New York County (Karla Moskowitz, J.), entered May 10, 1994, which granted plaintiffs' second motion to renew an order of the Supreme Court, New York County (Carmen Beauchamp Ciparick, J.) dated March 19, 1993 and, upon renewal, denied the motion of defendants New York Hospital and M. Lito Alonso, M.D. for summary judgment, unanimously reversed, on the law, without costs, the motion granted and the complaint dismissed as against said defendants.

This action for medical malpractice was brought to recover damages for failure to diagnose and treat prenatal hydroce-

phalus, as a result of which the infant plaintiff suffers various neurological deficits. In seeking dismissal of the complaint against them, the moving defendants stress that the extent of their involvement in this case is the performance of amniocentesis by M. Lito Alonso, M.D., a pathologist employed by New York Hospital. Dr. Alonso testified, at her examination before trial, that the results of the amniocentesis were normal, and plaintiff has offered no medical evidence to the contrary. There is no suggestion that the condition of the infant is the result of either a genetic defect or the procedure utilized in conducting the amniocentesis.

Opposition to defendants' motion is predicated on the asserted failure of Dr. Alonso to properly communicate her findings to the obstetrician, Robert Kaye, M.D. Plaintiff offers the affidavit of Peter Gottesfeld, M.D., a family practitioner, noting that certain details of the pathologist's written report were not verbally communicated to the obstetrician's office, as reflected in records maintained by Dr. Kaye and the testimony of Dr. Alonso at her examination before trial. Plaintiff's expert opines that it was "a departure from good and accepted practices" for Dr. Alonso to have caused a verbal report to be given to the obstetrician, indicating that the results of the test were normal. Plaintiff seizes upon two sentences in the written report by Dr. Alonso, stating: "One cell was missing an X chromosome, this finding is most likely a cultural artifact [viz., an error in cell division]. However, to follow this pregnancy with ultrasound is recommended."

Even granting, contrary to the testimony of Dr. Alonso and defendants' geneticist, that the absence of an X chromosome from a single cell is a significant finding, plaintiff has not established the nexus between the omission and the injuries sustained as a result of hydrocephalus. The question logically arises why failure to communicate details of a test, administered for a purpose entirely unrelated to plaintiff's condition and incapable of detecting that condition, should nevertheless constitute a basis for liability.

It is well settled that the exposure of a non-treating physician, engaged in a consulting capacity, to liability in medical malpractice is limited (Alvarez v Prospect Hosp., 68 NY2d 320, 323-325). It is not alleged that plaintiff's mother, Rachel Lipton, was subjected to any mistreatment during the course of the amniocentesis, that there was any misdiagnosis or even that plaintiffs condition is the product of a genetic defect that amniocentesis is designed to detect. Consequently, there is no basis for plaintiff's intimation that the pathologist should be

held responsible for the future treatment of a patient for whom she has made an accurate diagnosis *(supra; Fileccia v Massapequa Gen. Hosp.,* 99 AD2d 796, affd 63 NY2d 639).

Relying on Dr. Gottesfeld's affidavit, plaintiff contends, on appeal, that "negligently reporting the test results as normal * * * was a substantial factor in the failure to perform ultrasound during the remainder of the pregnancy until the day of delivery" (when a sonogram was finally conducted). While the theory upon which liability of the moving defendants is based is not articulated, the affidavit of plaintiff's medical expert intimates a breach of a common-law duty to disclose. Plaintiff suggests that, had the recommendation to conduct sonograms throughout the pregnancy been followed, hydrocephalus would have been discovered in time to prevent injury to the fetus. The basis of liability is therefore grounded in ordinary negligence *(see, Caracci v State of New York,* 203 AD2d 842; *see also, McKinney v Bellevue Hosp.,* 183 AD2d 563).

As stated in *Eiseman v State of New York* (70 NY2d 175, 187-188): "Liability in negligence may of course rest on some form of written misrepresentation or nondisclosure on the part of defendant by which plaintiff or a third party is misled, resulting in injury or damage to plaintiff. The basis of liability is the fact that the misrepresentation or nondisclosure has led the person to whom it was made to forego action that might otherwise have been taken for the protection of the plaintiff (Prosser and Keeton, Torts § 33, at 207 [5th ed]). 'Liability in such cases arises only where there is a duty * * * to give the correct information * * * There must be knowledge or its equivalent that the information is desired for a serious purpose; that he to whom it is given intends to rely and act upon it; that if false or erroneous he will because of it be injured in person or property. Finally, the relationship of the parties * * * must be such that * * * the one has the right to rely upon the other for information, and the other giving the information owes a duty to give it with care.' *(International Prods. Co. v Erie R. R. Co.,* 244 NY 331, 338.)"

Assuming, for the sake of a motion for summary judgment, that it was "erroneous" to characterize the results of the amniocentesis as "normal" *(supra),* the facts simply do not support the theory advanced by plaintiff for recovery against the pathologist and her employer. Dr. Kaye admits that his office received the verbal report of the results of the amniocentesis. He concedes that a note, affixed to the radiology report of the limited sonogram conducted at the time of the amnio-

centesis, acknowledges that he was expecting a written report. He further states that he has "a specific recollection of asking my secretary to get the written report". Dr. Kaye admits that the written report from Dr. Alonso was received and bears his initials: he is merely unable to recall when it was received. Finally, and most significantly, he stated his medical opinion that "I don't recall when I read it first, but having read this, I don't know that ultrasound was indicated on the basis of the report." Asked to clarify his remark, Dr. Kaye added, "I am reasonably sure it wasn't indicated." As the basis for his conclusion, he notes that "what Dr. Alonso was saying was abnormal or might have been abnormal, at the most, on this report, was not something that ultrasound was necessarily going to—there was nothing there that ultrasound was going to make a diagnosis of."

Accepting the contention that Dr. Kaye would have been justified in relying on any recommendation contained in the pathology report with respect to the management of Rachel Lipton's pregnancy *(Eiseman v State of New York, supra,* at 187), his testimony makes clear that he did not in fact rely on the recommendation "to follow this pregnancy with ultrasound". Indeed, Dr. Kaye disputes that the report even indicates the need for further sonograms and questions the effectiveness of ultrasound as a procedure for the diagnosis of Turner Syndrome, a condition involving a missing X chromosome in a female child.

Plaintiff's insinuation that Dr. Kaye was somehow misled by any communication or lack thereof by the pathologist is both belied by the record on appeal and different from any theory asserted in the pleadings and the bill of particulars *(Alvarez v Prospect Hosp., supra,* at 327). It is of no moment that plaintiff's expert witness construes the alleged failure of the pathologist to verbally communicate the details of her report as a departure from the standards of medical practice *(supra)*. As the Court of Appeals observed in *Eiseman v State of New York (supra,* at 187), "Unlike foreseeability and causation, both generally factual issues to be resolved on a case-by-case basis by the fact finder, the duty owed by one member of society to another is a legal issue for the courts" (citing *De Angelis v Lutheran Med. Ctr.,* 58 NY2d 1053, 1055). Whether, under given circumstances, a duty is owed by a consulting physician to a treating physician and, ultimately, his patient is a question of law, not medicine, and the proffered opinion by plaintiff's expert transcends the bounds of his competence and

intrudes upon the exclusive prerogative of the court. Concur—Rosenberger, J. P., Rubin, Ross and Williams, JJ.