■ MATTHEW A. SAWH, Respondent, v ROY SCHOEN et al., Defendants, and JOHN D'URSO, Appellant. [627 NYS2d 7] —Order of the Supreme Court, New York County (Karla Moskowitz, J.), entered August 5, 1994, which denied defendant John D'Urso, M.D.'s motion for summary judgment dismissing the complaint against him, unanimously reversed, on the law, without costs, the motion granted, and the complaint dismissed as against said defendant.

Defendant doctors practice medicine together as members of a professional corporation. Adrienne Sawh, the mother of the infant plaintiff, was a patient of the practice commencing in 1977. She received treatment from all three physicians affiliated with the group during the course of an earlier pregnancy. Adrienne Sawh was also seen by Dr. D'Urso for conditions unrelated to her pregnancies both before and after her period of gestation with the infant plaintiff. Obstetrical care for the

subject pregnancy was provided by two members of the practice beginning on February 28, 1985 until the infant plaintiff, Matthew, was delivered prematurely on July 13, 1985 by emergency caesarian section performed by defendant Roy Schoen, M.D. The complaint alleges that the child suffers from brain damage, cerebral palsy and quadriplegia as a result of the failure of the medical practice to diagnose and treat placenta previa.

Defendant John D'Urso, M.D. moved for summary judgment on the ground that he had neither participated in providing care to the mother nor supervised any doctor who did. Plaintiff's opposition to the motion is premised on the theory that Adrienne Sawh was a patient of the medical group, suggesting that Dr. D'Urso, by virtue of his membership in the group, therefore shared responsibility for her medical treatment. As a basis for imposing liability on Dr. D'Urso, plaintiff places great emphasis on weekly meetings held by the three doctors to apprise each other of the progress of their respective patients. Plaintiff's medical expert offered an opinion that Dr. D'Urso's failure to advise the treating physicians, defendants Roy Schoen, M.D. and Anthony Orlando, M.D., "in managing this high risk obstetrical patient, allowed the progression of the placenta previa resulting in vaginal bleeding, and ultimately an emergency caesarian section at 34-35 weeks gestation" and constitutes a departure from accepted obstetrical practice.

While acknowledging that a physician's liability for the malpractice of a colleague is predicated on agency and control (see, Business Corporation Law § 1505 [a]; *Hill v St. Clare's Hosp.,* 67 NY2d 72, 79), Supreme Court denied summary judgment on the ground that a question of fact exists as to whether Doctor D'Urso's participation in the weekly meetings gave rise to a physician-patient relationship. If so, the court reasoned, a question of fact is presented whether defendant owed plaintiff a duty of care.

At the outset, it must be emphasized that the question of the legal duty to be imposed upon an individual in any given situation is not a question of fact. "Unlike foreseeability and causation, both generally factual issues to be resolved on a case-by-case basis by the fact finder, the duty owed by one member of society to another is a legal issue for the courts" (*Eiseman v State of New York,* 70 NY2d 175, 187, citing *De Angelis v Lutheran Med. Ctr.,* 58 NY2d 1053, 1055). Plaintiff's entire theory of liability is that a member physician who attends group staff meetings at which a patient's care is

discussed thereby assumes liability for any deviation from accepted medical practice in the course of treatment rendered by his associates. Unless it can be said, as a matter of law, that a physician who engages in a discussion concerning a patient's condition thereby assumes an affirmative duty to accurately advise the treating physicians regarding the care of their patient and to verify that his advice has been followed, there is no cause of action to submit to a trier of fact *(see, Lipton v Kaye,* 214 AD2d 319).

At best, Dr. D'Urso's relationship to the patient in this matter might be construed as that of a consulting physician. However, it was his testimony during his examination before trial that he had "no recollection" of any discussion of Adrienne Sawh's placenta previa, and plaintiff can only surmise that, based upon the medical group's weekly meetings, each member of the office was aware of the condition. It is mere speculation that defendant Dr. D'Urso formulated an opinion regarding Adrienne Sawh's condition and contrary to the facts of record that he offered advice to his colleagues concerning her treatment. There is simply no evidence that he undertook to supervise her care so as to be subject to vicarious liability *(Kavanaugh v Nussbaum,* 71 NY2d 535, 546-547; *Graddy v New York Med. Coll.,* 19 AD2d 426, 429). As this Court recently noted, "Rank speculation is no substitute for evidentiary proof in admissible form that is required to establish the existence of a material issue of fact and, thus, defeat a motion for summary judgment" *(Tungsupong v Bronx-Lebanon Hosp. Ctr.,* 213 AD2d 236, 238; *Alvarez v Prospect Hosp.,* 68 NY2d 320, 324; *Parks v Greenberg,* 161 AD2d 467, 468, *lv denied* 76 NY2d 712). Merely pointing to circumstances in which a defendant physician might have undertaken joint management of the patient's care is not sufficient *(Tungsupong v Bronx-Lebanon Hosp. Ctr., supra; Kleinert v Begum,* 144 AD2d 645, 647).

Supreme Court's reliance on the opinion proffered by two of plaintiff's medical experts is similarly misplaced. The court adopted the conclusion stated in the witnesses' affidavits, which "characterize defendant D'Urso's failure to advise the other defendants or the plaintiff on the proper treatment for her condition as a departure from accepted medical practice." But if the duty to be imposed on a physician is not a question of fact, neither is it a question of medicine. As we recently observed in *Lipton v Kaye (supra,* at 322-323), "Whether, under given circumstances, a duty is owed by a consulting physician to a treating physician and, ultimately, his patient

is a question of law, not medicine, and the proffered opinion by plaintiff's expert transcends the bounds of his competence and intrudes upon the exclusive prerogative of the court." A plaintiff may not, in the guise of an offer of expert medical testimony, arrogate to himself a judicial function and obviate a ruling on the extent of any legal duty that might be owed by the physician to his patient.

Even if we were to assume, for the sake of argument, that plaintiff would be able to establish at trial that Dr. D'Urso was involved in the treatment of Adrienne Sawh in a consulting capacity, it is well settled that a physician, formally engaged as a consultant, has only limited exposure to liability in medical malpractice (Alvarez v Prospect Hosp., supra, at 323-325; Lipton v Kaye, supra). Where, as here, the consulting physician is not involved in the treatment of the patient's condition, he can be said to have given at most an informal opinion to an associate regarding a case with which he otherwise had no connection (see, Ingber v Kandler, 128 AD2d 591). In addressing the public policy to be advanced, it has been held that "[i]mposition of liability under these circumstances would not be prophylactic but instead counter-productive by stifling efforts at improving medical knowledge" (Rainer v Grossman, 31 Cal App 3d 539, 544, 107 Cal Rptr 469, 472). As stated by this Court, "an enlarged liability would tend to discourage a physician from arranging to have another care for his patients on his illness or absence and thus curtail the availability of medical service" (Graddy v New York Med. Coll., supra, at 430; Kavanaugh v Nussbaum, supra, at 548). We conclude that the record in this matter presents no basis for departing from the well-established rule that the imposition of vicarious liability on a physician depends on agency and the extent of his control over the acts of the alleged tortfeasor. Concur—Sullivan, J. P., Rosenberger, Wallach and Rubin, JJ.