In re SEALED CASE.

Nos. 94–7200, 94–7201.

United States Court of Appeals, District of Columbia Circuit.

Argued Sept. 27, 1995.

Decided Oct. 27, 1995.

---

David C. Schroeder, Washington, DC, argued the cause and filed the briefs for appellant.

Lee T. Ellis, Jr., argued the cause for appellee, with whom M. Tracy McPherson, Washington, DC, was on the brief.

Before: EDWARDS, Chief Judge, WALD and RANDOLPH, Circuit Judges.

WALD, Circuit Judge:

Appellant, Mrs. B, claims that she contracted HIV, the virus that causes AIDS, from her husband. She is suing Dr. M ("Consultant"), who worked on a part-time basis for Mr. B's physician, Dr. C ("Doctor"). Doctor, the husband's physician, hired Con-

sultant part-time to review laboratory data from tests ordered or performed by Doctor. Consultant, in his performance of these "quality control" data reviews, would direct Doctor's attention to results he believed might be in error, or suggest follow-up protocols that he believed should be performed. Sometimes Consultant would also make suggestions to the patient that Doctor would review and, if he agreed with them, pass on to the patient.

In the exercise of this agreement with Doctor, Consultant reviewed six pages of laboratory test data regarding tests Doctor had ordered to be done for patient Mr. B during an office visit on September 23, 1988. Based on his review, Consultant made several comments on the last page of the reports, which he then returned to Doctor, who countersigned Consultant's comments. Mrs. B claims that from this review of one day's laboratory tests, Consultant acquired a duty to examine her husband's complete medical file, from which she alleges Consultant should have discovered that Mr. B carried the HIV virus, that he was married to Mrs. B, and that Mrs. B was at risk of contracting the virus from her husband. Accordingly, Mrs. B argues that Consultant had a duty, which he failed to meet, to warn her that her husband had tested HIV-positive and could transmit the virus to her. The district court granted summary judgment for Consultant, finding that any duty he owed to Mrs. B was limited to his contractual duty to review and record her husband's test results correctly.

Because we agree that the narrow scope of Consultant's relationship with Doctor did not give rise to an obligation for Consultant to review the entire file of every patient whose laboratory data he reviewed at Doctor's request, we hold that Consultant did not have—and therefore could not have breached—any duty to notify Mrs. B of her husband's HIV status. We therefore affirm the district court's grant of summary judgment to the defendant.

## I. Background

We can affirm the district court's grant of summary judgment in favor of Consultant only if we find that "there is no genuine issue of material fact, and, viewing the evidence in the light most favorable to the nonmoving party, the movant is entitled to prevail as a matter of law." *Sherwood v. Washington Post,* 871 F.2d 1144, 1146 (D.C.Cir.1989) (citing *Byers v. Burleson,* 713 F.2d 856, 859 (D.C.Cir.1983)). In that light, we must evaluate the facts as alleged by Mrs. B.

Mrs. B claims that her husband visited Doctor, his regular physician, in 1987. During the visit, Doctor tested Mr. B for HIV, and that test came back positive. Doctor explained to Mr. B that he had been exposed to the virus that causes AIDS, but that the positive test result did not necessarily mean that Mr. B had the AIDS virus in his blood. Doctor recommended a second test, which came back negative. The doctor assured Mr. B that the negative result meant that the AIDS virus was not present in the sample of blood he tested, and Mr. B understood this to mean that he did not have the virus and could not transmit it to anyone.

In January, 1988, Consultant began working for Doctor on a part-time basis to see some of Doctor's patients and to perform quality control for the office. During the time in which appellant's cause of action arose, Consultant never saw or met with Mr. B. Consultant's only involvement with Mr. B's medical care arose through his conduct of quality control review of laboratory work that Doctor had ordered done for Mr. B during a September 23 office visit. According to his agreement with Doctor, Consultant's quality control duties involved making sure that the tests Doctor had ordered had been done; that the results did not contain any glaring laboratory or typographical errors; and that any necessary follow-up had been conducted. As a result of his review of Mr. B's September 23 test results, Consultant made some brief suggestions to the patient for Doctor to review.[1] Consultant

---

**1.** Consultant wrote on the last of the six pages of laboratory reports he had reviewed: "Weight reduction will help lower blood pressure and may help breathing. IgE indicates part of the problem is an allergic state. Let us know if antibiotic is not helping."

signed his name below these comments and delivered them to Doctor, who then approved and countersigned the suggestions. The lab reports Consultant reviewed did not contain any records that, without additional information from Mr. B's file, could have alerted Consultant to Mr. B's HIV status. Mrs. B alleges, and has produced the affidavits of two expert witnesses to support her allegation, that Consultant's review of Mr. B's test results nonetheless gave rise to a duty to review the patient's medical records dating back at least to May, 1987.

Mr. and Mrs. B originally filed separate complaints, which the court consolidated in 1993, against both Doctor and Consultant. In May, 1994, Mrs. B settled her claim against Doctor. A month later, the district court granted summary judgment in favor of Consultant on both claims, but denied Doctor's motion for summary judgment. The court thereafter granted Consultant's Motion to Direct the Entry of Final Judgment in his favor, from which Mrs. B, but not Mr. B, has appealed. Thus, the only parties involved in the appeal are Mrs. B and Consultant.

Mrs. B argues that Consultant's review of her husband's records from the September 23 visit, at the request of the treating physician, established a physician-patient relationship between Consultant and Mr. B. Out of that relationship, she claims, Consultant acquired a specific duty to warn her of the risk of HIV transmission from her husband. Mrs. B also contends that a physician owes a general duty of care to foreseeable victims of his or her negligence. Because Consultant negligently failed to warn Mr. B that he could transmit HIV to others, and Mrs. B was a foreseeable victim of that omission, he can be legally held liable to her for the consequences of his negligence.

Pretermitting the question of what circumstances, if any, impose a duty upon a physician to notify a third party of a patient's HIV status, we reject the appellant's claims. The District of Columbia has not yet addressed the third-party notification issue, and we find, in any case, that any duty owed by the defendant Consultant in the circumstances of this case was limited to a careful review of the laboratory records referred to him by Mr. B's primary physician.

## II. Discussion

■ This diversity action is governed by the substantive tort law of the District of Columbia. *See Joy v. Bell Helicopter Textron, Inc.,* 999 F.2d 549, 553 (D.C.Cir.1993) (citing *Schleier v. Kaiser Found. Health Plan of the Mid–Atlantic States, Inc.,* 876 F.2d 174, 180 (D.C.Cir.1989)). A successful negligence claim by Mrs. B against Consultant would have to establish the following propositions: first, that Consultant owed a duty, under District of Columbia law, to Mrs. B to conform to a certain standard of care; second, that Consultant breached this duty; and finally, that his breach caused the injury to the plaintiff. *See Psychiatric Institute of Washington v. Allen,* 509 A.2d 619, 623–24 (D.C.1986); *see also White v. United States,* 780 F.2d 97, 102 (D.C.Cir.1986) (applying D.C. law); *Esfandiari v. United States,* 810 F.Supp. 1, 6–7 (D.D.C.1992) (addressing both D.C. and Virginia law). The existence of the first element, a legal duty owed by the defendant to the plaintiff, is a question of law, to be determined by the court. *See Zhou v. Jennifer Mall Restaurant,* 534 A.2d 1268, 1274 (D.C.1987) ("Defining the contours of common law liability, *including the duty that may have been breached in a negligence case,* is a task traditionally within the purview of the judicial branch." (emphasis added)); *accord* RESTATEMENT (SECOND) OF TORTS § 328B(b), (c) (1963) (the court determines whether the facts give rise to any legal duty on the part of the defendant, and the standard of conduct required of the defendant by his legal duty); *see also Bradshaw v. Daniel,* 854 S.W.2d 865, 869 (Tenn.1993); *Fox v. Custis,* 236 Va. 69, 372 S.E.2d 373, 375 (1988); *McIntosh v. Milano,* 168 N.J.Super. 466, 403 A.2d 500, 514 (1979). The court should determine the existence of a duty "by reference to the body of statutes, rules, principles, and precedents...." W. PAGE KEETON ET AL., PROSSER AND KEETON ON THE LAW OF TORTS § 37 at 236 (5th ed. 1984).

■ Mrs. B relies heavily on her claim that Consultant and Mr. B had established a physician-patient relationship. According to

her theory, the specific duty of disclosure she alleges Consultant owed her arose out of this claimed doctor-patient relationship between him and Mr. B. We disagree with Mrs. B, however, that the critical inquiry here concerns the existence of a formal relationship between the patient and his doctor's part-time consultant. Even if Mrs. B were correct that her husband and Consultant established a physician-patient relationship, that relationship would only obligate Consultant to exercise "the degree of care and skill reasonably expected of other medical professionals ... *acting under similar circumstances.*" *Scarzella v. Saxon,* 436 A.2d 358, 361 (D.C.1981) (emphasis added); *accord Morrison v. MacNamara,* 407 A.2d 555, 560 (D.C.1979).

■ To apply this standard, we must look carefully at the precise circumstances under which Consultant performed his services. Because the undisputed facts show that Consultant's only relationship with Mr. B grew out of his obligation to Doctor, the pivotal question involves the scope of the relationship between the two physicians. Doctor hired Consultant to perform "quality control," which involved checking patients' charts to ensure that tests Doctor had ordered had actually been conducted and any necessary follow-up performed. Thus, Consultant had only the duty toward the Doctor, and arguably to Mr. B, to use that level of skill expected of a part-time consultant whose discrete task is to review a particular set of test results ordered by the primary physician of a patient with whom the consultant has no independent relationship.

■ Mrs. B does not allege that Consultant misread the six pages of results he reviewed, nor that he failed to inquire into or diagnose any underlying medical problem that he should have suspected based on those six pages. Thus, we conclude that Consultant breached no duty owed to Doctor or Mr. B, and therefore could not have breached any derivative duty owed to Mr. B's wife.

Mrs. B claims that the proffered testimony of two expert witnesses raises a genuine issue of material fact about the existence of a broader duty owed to Mrs. B, and therefore precludes a grant of summary judgment. We disagree.

Mrs. B's first expert, Dr. Abramson, would have testified at trial that Consultant undertook a doctor-patient relationship with Mr. B by agreeing to perform his quality control review of Mr. B's test results. In making his recommendations on the report, according to the expert, Consultant had a duty to review the patient's entire medical file, discover his HIV status and the fact that he was married to Mrs. B, and contact Mrs. B to warn her of her risk of exposure. Consequently, Dr. Abramson concludes, Consultant "did not meet the standard of care in treating [Mr. B] or warning [Mrs. B] when he acted in 1988." The second expert, Dr. Ward, would have testified that Consultant failed to meet the standard of care for a physician reviewing the chart and records of a patient who was HIV-positive by failing to review his medical records dating back at least to May 1987, which would have indicated that the patient was HIV-positive.

■ We have already determined that any doctor-patient relationship between Consultant and Mr. B was circumscribed by the terms of Consultant's agreement with Doctor. The standard of care owed by Consultant is similarly limited. Where, as here, an expert witness testifies that a defendant failed to meet a "standard of care" that is different from the standard the court determines the defendant owes the plaintiff in a particular circumstance, the expert testimony cannot suffice to rescue a case from summary judgment. The trial judge determined as a matter of law—and we agree—that Consultant in this instance owed Doctor, and arguably Mr. B, a duty to perform his quality control review of laboratory records carefully and, if appropriate, offer reasonable recommendations to Doctor for follow-up. The experts allege that Consultant breached a *different* standard of care, namely the standard Consultant would have owed had he been Mr. B's treating physician. Appellant does not allege, however, that Consultant ever treated—or for that matter, even met—her husband during the relevant time period. The uncontroverted evidence shows that Consultant's sole involvement with Mr. B's

medical care involved his review of six pages of lab reports and his suggestions written thereon, which Mr. B's treating physician could review and do with as he wished.

We have not found any District of Columbia cases describing the duty owed to a patient by a consulting physician in a contractual relationship with the patient's regular doctor, but analogous cases in other states offer support to our conclusion that the standard of care owed extends only to the careful performance of the duties outlined by the contractual agreement.

A New York court recently determined that a non-treating physician who belonged to a group practice should have been granted summary judgment in the trial court, despite expert testimony that the defendant had, by participating in weekly discussions of the group's cases, established a physician-patient relationship with the plaintiff and had violated the standard of care by not warning her primary physicians of the high risk of her obstetrical condition. *Sawh v. Schoen,* 627 N.Y.S.2d 7 (App.Div.1995). The court held that "[w]hether, under given circumstances, a duty is owed by a consulting physician to a treating physician and, ultimately, his patient is a question of law, not medicine, and the proffered opinion by plaintiff's expert transcends the bounds of his competence and intrudes on the exclusive prerogative of the court." *Id.* at 9–10. In *Sawh,* the defendant's involvement with the patient during the pregnancy which gave rise to her lawsuit had been limited, at most, to a consultant capacity. The plaintiff in that case, like Mrs. B, produced affidavits from other doctors suggesting that the defendant had departed from accepted medical practice through his failure, during weekly progress meetings, to advise his partners, who had treated the plaintiff, that the plaintiff was a high risk obstetrical patient. The appellate court, however, held that summary judgment was

appropriate because the defendant had breached no legal duty to the plaintiff. Even if the doctor had been involved with the patient's treatment, which the court found he had not, "it is well settled that a physician, formally engaged as a consultant, has only limited exposure to liability in medical malpractice." *Id.* at 10.

In *Al Malki v. Krieger,* 624 N.Y.S.2d 167 (App.Div.1995), the same court reversed a judgment against a physician who had treated the plaintiff in the emergency room and later been relegated to the role of a consultant. The court found that the duty the doctor owed to the patient once the doctor became a mere consultant was "to advise and make appropriate recommendations to the plaintiff's treating physician." *Id.* at 169. *Accord Prooth v. Wallsh,* 105 Misc.2d 603, 432 N.Y.S.2d 663, 666 (Sup.Ct.1980) ("[T]he primary duty of a consulting specialist is to advise and make recommendations to the treating physician himself who may, then, with full knowledge of the patient's history and other conditions, make the ultimate decision as to the scope of the information that should be given to the patient.").

In *St. John v. Pope,* 38 Tex.Sup.Ct.J. 723, 901 S.W.2d 420 (1995), the Texas Supreme Court held that an on-call emergency room physician who had recommended declination of a case during a telephone consultation with the on-site emergency room doctor had never established a doctor-patient relationship with the patient so as to give rise to a duty of care. The court held that the existence of a duty owed to the patient was a question of law that must be determined before the issue of standard of care arises, and that summary judgment was therefore appropriate despite plaintiff's expert testimony suggesting that a reasonable doctor in the defendant's position should have recognized the possibility of a serious infection and accepted the plaintiff as a patient. *Id.* 901 S.W.2d at 422–23.[2]

**2.** A California court of appeals has also held a single telephone consultation insufficient to establish a duty owed by a doctor to a patient. In *Barton v. Owen,* 71 Cal.App.3d 484, 139 Cal.Rptr. 494 (1977), the plaintiff sued his primary physician and his physician's partner for malpractice. The partner, Dr. Wasserman, had never seen or treated the patient, but had merely engaged in a

single telephone call with the plaintiff's wife while covering for the plaintiff's primary physician, who was unavailable. During the conversation, the plaintiff's wife had informed Dr. Wasserman that her husband had come home from work suffering from a sharp headache. Dr. Wasserman stated that the problem sounded like sinusitis, refused to prescribe medication over

In this case, Consultant undertook only the duty to perform his contractual obligations as a part-time consultant with care and skill. Thus, Consultant had a duty to review the lab results from Mr. B's September 23 visit with that degree of care and skill reasonably expected of other medical professionals reviewing that type of limited data.[3] The undisputed facts in this case show that the records given to Consultant to review did not contain any information regarding Mr. B's HIV status. Nor does Mrs. B allege that the records contained information that *should* have alerted Consultant to Mr. B's condition. Accordingly, Consultant acquired no legal duty—either specific or general—to warn the appellant of a condition about which he neither knew nor should have known.

Thus, we find that the defendant in this case, who had no relationship with the HIV-positive patient outside the scope of his contract with the patient's physician, had no duty to notify the spouse of the patient of her husband's HIV status. Accordingly, the district court's grant of summary judgment for the defendant is

*Affirmed.*

---

the phone, and suggested that the patient take some aspirin and see his regular doctor in the morning. On these facts, the court found it "unquestionable that no negligent liability exists on the part of [the partner]." *Id.,* 139 Cal.Rptr. at 497.

Additionally, several cases addressing the duty owed by a doctor hired by a third party (*i.e.,* an employer) to examine a patient have held that the doctor owes only a very limited duty to the patient. In *Peace v. Weisman,* 186 Ga.App. 697, 368 S.E.2d 319 (1988), a Georgia court affirmed a grant of summary judgment to a physician hired by the Department of Resources to determine the plaintiff's fitness to return to work. The court found as a matter of law that there had been no physician-patient relationship established, and that the doctor's only duty to Mr. Peace "was to conduct the examination in such a manner as not to injure him." *Id.,* 368 S.E.2d at 321.

Similarly, a Pennsylvania court affirmed a summary judgment award to a doctor hired by

the plaintiff's workmen's compensation carrier. Like Mrs. B, the plaintiff claimed that the doctor had breached the standard of care owed by failing to note or consider the results of prior medical tests performed on the patient. The court agreed with the trial court that the doctor's "only duty to use professional skill and ability in performing the examination and issuing his report ran to the party which so engaged him, the workmen's compensation carrier." *Craddock v. Gross,* 350 Pa.Super. 575, 504 A.2d 1300, 1301 (1986).

3. This duty differs only slightly from the one proposed by the district court's order, which held that Consultant's duty "was limited to his contractual duty to review and record Mr. B's test results *correctly.*" Mem. and Order at 3 (emphasis added). A doctor generally insures that he or she will exercise standard professional skill, but does not necessarily warrant a correct diagnosis or course of treatment. W. PAGE KEETON ET AL., PROSSER AND KEETON ON THE LAW OF TORTS § 32 at 186 (5th ed. 1984).