■ SYLVIA MARGOLESE et al., Respondents, v LUIS E. URIBE et al., Appellants. [655 NYS2d 524] —Order, Supreme Court, New

York County (Beverly Cohen, J.), entered August 20, 1996, insofar as it denied defendants' motions for summary judgment, unanimously reversed, on the law, without costs, summary judgment granted in favor of defendants, and the appeals from those portions of the order which denied the motions for reargument and renewal of the vacatur of the prior dismissal and restoration to the calendar, unanimously dismissed as academic. Appeal from order, same court and Justice, entered on or about May 21, 1996, which granted plaintiffs' motion to vacate dismissal and restore the case to the trial calendar and further directed plaintiffs to file a new note of issue on condition that plaintiffs' attorney pay the sum of $2,000 to defendants, unanimously dismissed, without costs, as academic.

Plaintiff is an 81-year-old woman with a history of medical and eye problems, including cataract surgery in 1985 and 1987 on her right and left eye, respectively. In 1987, she was referred to Dr. Uribe after cataract surgery left her with greatly diminished sight in her left eye. He diagnosed corneal dystrophy and advised plaintiff that she needed a corneal transplant and to return to see him in three months. She returned on April 27, 1988 and Dr. Uribe again recommended a corneal transplant. The surgery took place in June of 1988.

Soon afterwards, plaintiff complained to the doctor about flashes of light in her left eye and he advised her that the condition was temporary and would resolve itself. Her sight did begin to improve but her complaints regarding the flashes of light continued. Dr. Uribe referred her to Dr. Karlin, a retina specialist. At her first appointment, on October 26, 1988, she alleges that Dr. Karlin diagnosed a "broken" retina, while Dr. Karlin's records indicate that he performed a sonography and ruled out retinal detachment. He diagnosed an inflammation of the vitreous of the eyeball and prescribed medication for that condition. She next saw Dr. Karlin on November 8, 1988 and informed him that she continued to see the flashes of light. He noted in his records that the vision in the left eye was improved, that several diagnostic examinations were performed, and, once again, that no retinal detachment was present. On November 14, 1988, she returned to his office complaining of "pouring out lights" in her vision in the left eye. This time a sonography and ultrasound confirmed a retinal detachment and she was immediately admitted to the hospital for surgery. The surgery was unsuccessful and subsequently plaintiff lost almost all sight in her left eye and continues to experience flashes of light in that eye.

Defendants' summary judgment motions should have been granted. In *Alvarez v Prospect Hosp.* (68 NY2d 320, 324-325), the Court of Appeals defined the burdens of the respective parties on summary judgment motions and, speaking specifically to the situation presented in this case, stated: "In a medical malpractice action, a plaintiff, in opposition to a defendant physician's summary judgment motion, must submit evidentiary facts or materials to rebut the prima facie showing by the defendant physician that he was not negligent in treating plaintiff so as to demonstrate the existence of a triable issue of fact [citations omitted]. General allegations of medical malpractice, merely conclusory and unsupported by competent evidence tending to establish the essential elements of medical malpractice, are insufficient to defeat defendant physician's summary judgment motion".

The defendants here met their burden as summary judgment proponents. The doctors submitted affidavits of experts who concluded, after reviewing all relevant documents, medical records and the transcript of plaintiff's examination before trial, that both Drs. Uribe and Karlin proceeded properly and in accordance with good and accepted medical practice, that there was no evidence to support plaintiff's allegation that there was serious delay in diagnosing the retinal detachment, and that there was no indication until November 14, 1988 that a retinal detachment existed.

In an effort to rebut this evidence and meet their burden on summary judgment, plaintiffs submitted affidavits of experts who had reviewed defendants' office records and the transcript of plaintiff's examination before trial. Plaintiffs' experts concluded, without citing supporting evidence, that since plaintiff suffered a retinal detachment and the reattachment was unsuccessful, the condition must have existed during the months preceding diagnosis, i.e., the period in which defendants provided treatment. The affidavits did not demonstrate why the referral should have occurred sooner or that the detached retina existed prior to the date on which it was diagnosed or how the condition could have been diagnosed earlier by defendants. Such affidavits were incompetent to demonstrate that the treatment provided by defendants failed to comport with accepted medical practice and that such failure was the proximate cause of plaintiff's alleged injury (*Alvarez v Prospect Hosp., supra; Koeppel v Park*, 228 AD2d 288, 289; *Lucarello v New York Zoological Socy.*, 211 AD2d 556, 557; *Ferrara v South Shore Orthopedic Assocs.*, 178 AD2d 364, 366; *Burt v Lenox Hill Hosp.*, 141 AD2d 378, 380).

In fact, plaintiffs never demonstrated that defendants' treatment was the proximate cause of Mrs. Margolese's condition. Her prior history of medical and eye problems was never addressed; neither was her condition at the time of her original consultation with Dr. Uribe, namely an inability to see out of her left eye after cataract surgery performed by another doctor. Nor did her experts' affidavits address the issue of whether her photopsia symptomology was indicative of a detached retina, as opposed to other possibilities, nor the issue raised by defendants' expert regarding the often unsuccessful outcome of retinal reattachment surgery and the fact that some of the factors governing that outcome are not within a physician's control.

Moreover, the motion court erred in apparently denying summary judgment against Dr. Karlin solely on Mrs. Margolese's deposition testimony that Dr. Karlin told her that her retina was "broken" on October 26, 1988. Such evidence alone is insufficient, in a medical malpractice action, to rebut the competent affidavits of defense experts in support of summary judgment (*Oates v New York Hosp.*, 131 AD2d 368, 370, citing *Alvarez v Prospect Hosp., supra*).

Our disposition of the summary judgment issue renders the remaining issues raised on these appeals academic. Concur—Rosenberger, J. P., Wallach, Rubin and Williams, JJ.