■ JOETTA HUFFMAN, Respondent, v THE LINKOW INSTITUTE FOR ADVANCED IMPLANTOLOGY, RECONSTRUCTIVE AND AESTHETIC MAXILLO-FACIAL SURGERY et al., Defendants, and LEONARD LINKOW, DDS, DMSC, Appellant. [826 NYS2d 229]—

Order, Supreme Court, New York County (Sheila Abdus-

Salaam, J.), entered April 25, 2005, which, in an action for dental malpractice, insofar as appealed from, denied that aspect of defendant Dr. Linkow's motion for summary judgment dismissing plaintiff's claims pertaining to his treatment of her upper jaw, reversed, on the law, without costs, and that aspect of the motion granted.

This dental malpractice action stems from dental care and treatment received by plaintiff from Dr. Linkow and defendant George Anastassov, DDS, between October 2000 and April 2002. During this period, Drs. Anastassov and Linkow attempted to reconstruct plaintiff's upper jaw. On October 4, 2000, Dr. Anastassov placed 13 dental implants in plaintiff's upper jaw. Approximately five months later, Dr. Anastassov uncovered the implants. To uncover the implants, Dr. Anastassov incised plaintiff's gum tissue and pulled the tissue back to expose the implants. He then removed a pair of loose implants and placed abutments (i.e., metal posts which serve as support structures for crowns) on the remaining implants. Lastly, Dr. Anastassov placed a temporary bridge on top of the abutments (i.e., he "loaded" the implants), which allowed the prosthesis to function like a real set of teeth.

On March 13, 2001, Dr. Linkow, who had been plaintiff's restorative dentist since the early 1970s, removed sutures that Dr. Anastassov had placed in plaintiff's gum tissue when he uncovered the implants. Dr. Linkow noted that the gum tissue was healing well but observed that healing on the upper right side of plaintiff's mouth was "proceeding more slowly." On May 31, 2001, Dr. Linkow took impressions of plaintiff's upper jaw for a permanent, upper-roundhouse bridge (i.e., a one-piece bridge). Two weeks later Dr. Linkow placed a laboratory-fabricated casting for the upper-roundhouse in plaintiff's mouth. After ascertaining that the casting properly fit in plaintiff's mouth, Dr. Linkow returned it to the laboratory to be coated with porcelain. Dr. Linkow saw plaintiff for the last time on July 3, 2001, when he placed the porcelain-coated casting in plaintiff's mouth to ensure that it properly fit. Dr. Linkow then returned the casting to the laboratory for a final glaze coating.

Plaintiff, who claims that she sustained damages as a result of the failed attempt to reconstruct her upper jaw, commenced this action against, among others, Dr. Linkow. Following the filing of the note of issue, Dr. Linkow moved for summary judgment dismissing the complaint as against him. Dr. Linkow's motion was supported by his affidavit in which he averred that he neither participated in nor was responsible for the surgical aspects of plaintiff's treatment. Dr. Linkow opined that the

postsurgical treatment he did provide to plaintiff comported with good and accepted dental practice.

In opposition to the motion, plaintiff submitted the affidavit of a dental expert who opined, among other things, that Dr. Linkow departed from good and accepted dental practice by failing to coordinate plaintiff's treatment with Dr. Anastassov, failing to create a "stent" (i.e., a surgical guide) setting forth the exact location in plaintiff's mouth where each implant should have been placed, and failing to consult with Dr. Anastassov to formulate a revised treatment plan after observing that the gum tissue in plaintiff's upper right jaw was healing slower than the tissue in the upper left jaw. Plaintiff's expert also opined that Dr. Linkow departed from good and accepted dental practice in the manner in which he treated plaintiff's lower jaw, an allegation not raised in the complaint or bill of particulars.

Supreme Court denied Dr. Linkow's motion, finding that triable issues of fact existed regarding Dr. Linkow's alleged negligence in treating plaintiff's upper jaw, as well as the issue of causation. With respect to plaintiff's expert's assertion that Dr. Linkow negligently treated plaintiff's lower jaw, Supreme Court treated that aspect of plaintiff's opposition as an application for leave to amend her bill of particulars to include such a claim and granted the application. Supreme Court noted that plaintiff's claim regarding her lower jaw was not considered in conjunction with Dr. Linkow's motion since the claim had not been raised in the complaint or initial bill of particulars. Dr. Linkow appeals only from the denial of that aspect of his motion which sought summary judgment dismissing plaintiff's claims against him pertaining to her upper jaw.

"Although physicians owe a general duty of care to their patients, that duty may be limited to those medical functions undertaken by the physician and relied on by the patient" (*Boone v North Shore Univ. Hosp. at Forest Hills*, 12 AD3d 338, 339 [2004] [internal quotation marks omitted]). Here, Dr. Anastassov alone determined that plaintiff was a suitable candidate for implants, decided the number and location of the implants, performed the initial surgical procedure, and uncovered and loaded the implants. Dr. Linkow was not involved with the surgical aspects of plaintiff's care and his involvement with the care and treatment of plaintiff's upper jaw was limited to postsurgical restorative efforts (i.e., fabricating a temporary bridge, taking impressions for the permanent, upper-roundhouse bridge, and assuring that the casting for the bridge properly fit in plaintiff's mouth). Additionally, there is no indication that Dr. Linkow supervised the care provided to plaintiff by Dr.

Anastassov or otherwise controlled that care (*see Sawh v Schoen,* 215 AD2d 291 [1995]; *Markley v Albany Med. Ctr. Hosp.,* 163 AD2d 639 [1990], *cf. Mandel v New York County Pub. Adm'r,* 29 AD3d 869 [2006]). Accordingly, Dr. Linkow owed no duty to plaintiff regarding the surgical aspects of the care and treatment she received, and is entitled to summary judgment dismissing the claims premised on his alleged failure to coordinate her treatment with Dr. Anastassov, create a stent, and formulate a revised treatment plan in consultation with Dr. Anastassov.*

Even assuming, arguendo, that Dr. Linkow owed a duty to plaintiff regarding the surgical aspects of her care and treatment, the affidavit of plaintiff's expert was insufficient to raise a triable issue of fact. Plaintiff's expert summarily concluded that Dr. Linkow committed dental malpractice by failing to coordinate plaintiff's treatment with Dr. Anastassov, create a stent, and consult with Dr. Anastassov to formulate a revised treatment. With respect to the issue of causation, plaintiff's expert concluded, without elaboration, that Dr. Linkow's alleged departures were "a competent producing cause of [plaintiff's] loss of implants, infection, and bone loss." These conclusory assertions of dental malpractice and causation were insufficient to raise a triable issue of fact (*see Margolese v Uribe,* 238 AD2d 164, 166-167 [1997]; *see also Furey v Kraft,* 27 AD3d 416 [2006], *lv denied* 7 NY3d 703 [2006]; *DiMitri v Monsouri,* 302 AD2d 420 [2003]). Concur—Sullivan, Nardelli, Catterson and McGuire, JJ.

Tom, J.P., dissents in a memorandum as follows: This action arises out of restorative work performed on plaintiff's maxilla (upper jaw) involving the insertion of dental implants to support a permanent bridge, thereby replacing her upper teeth. In September 2000, plaintiff consulted with defendant-appellant Linkow, her primary dentist for many years, concerning reconstruction of her upper jaw. Plaintiff wanted "permanent teeth" to replace her removable denture. Defendant Anastassov, an oral surgeon, undertook the initial work of enhancing plaintiff's jawbone and inserting the implants. Linkow then performed restorative dental work, including crowns and bridgework, proper fit, bite and aesthetics. Anastassov per-

---

* Although plaintiff's expert indicated that Dr. Linkow had an obligation to coordinate plaintiff's treatment with Dr. Anastassov and to create a stent, the question of the legal duty to be imposed on a physician is neither a question of fact nor of medicine, and the expert's affidavit was without probative force in this regard (*see Sawh,* 215 AD2d at 293-294, citing *Lipton v Kaye,* 214 AD2d 319, 322-323 [1995]).

formed a sinus lift in early October 2000 and immediately inserted 13 implants into the upper jaw. In late February 2001, he uncovered the implants and affixed abutments, to which a bridge would later be attached. The procedure was not altogether successful because, upon uncovering the implants, Anastassov discovered that two were loose and had to be removed. However, he proceeded to place a temporary bridge on the remaining 11 abutments.

In mid-March 2001, Linkow examined plaintiff's jaw and found it was "healing well but that the healing on the upper right was proceeding more slowly. I made a temporary bridge from acrylic material and placed it on top of the abutments." In early May, defendant Ho Lee, D.D.S., M.D., removed the temporary bridge to take impressions for the permanent bridge and discovered that two more implants were loose. He removed them and made another temporary bridge, which he placed on the remaining nine abutments. On May 31, Linkow removed the temporary bridgework to take an impression for a permanent upper roundhouse and then replaced it. In mid-June, he prepared a metal casting for the upper jaw to provide a foundation for a porcelain finish. On July 3, he removed the temporary bridge to fit the new upper roundhouse and then replaced the temporary bridge. On December 6, plaintiff again saw Anastassov, who found that two more implants were loose and removed them. He inserted a new implant to provide additional support because a minimum of eight implants was necessary to secure the bridgework.

The complaint alleges, inter alia, that plaintiff was not a proper candidate for the implant procedure and that the remaining implants were too unstable to adequately support a bridge. At her examination before trial, plaintiff testified that two of the original implants had migrated into her sinus cavity and had to be removed through her nose. The complaint alleges that she sustained infections of the mouth, gums, sinuses, tonsils and jaw and experienced severe headaches, inability to swallow and weight loss.

Linkow moved for summary judgment dismissing the complaint as against him, asserting that the temporary bridges were made and placed in accordance with good and accepted dental practice, that the impressions for the permanent bridge were taken in accordance with good and accepted dental practice and that his work did not cause or contribute to the loosening of the six implants that required removal or to any other injury alleged by plaintiff. Linkow noted that it was Anastassov alone who evaluated plaintiff, finding her to be a good candidate for

the implant procedure, and who subsequently performed all necessary surgery.

In opposition, plaintiff submitted the affidavit of a maxillofacial surgeon who identified several departures from good and accepted dental practice. The surgeon noted that, after performing a sinus lift to graft artificial bone into the maxilla, "no implants should be placed for approximately six to nine months to allow the bone to sufficiently harden," and that "six to nine months should pass before the implants are uncovered and loaded, or fitted with abutments on which to place the bridge, to allow for adequate integration of the implant into the bone." With respect to Linkow, the expert opined that as the party "primarily responsible for restoring Ms. Huffman's mouth following surgery," he departed from good and accepted dental practice, abdicating plaintiff's evaluation to Anastassov and failing to participate in a treatment plan. Particularly, when Linkow noted that healing on the upper right was slow, the "failure to consult with Dr. Anastassov to formulate a revised treatment plan at that point is a departure from the standard of care." The expert opined that "reconstruction of the jaw is a team effort by both the surgeon and restorative dentist. Both doctors together must work for a successful outcome." The expert concluded that the lack of coordination between the dental practitioners "was a competent producing cause of Ms. Huffman's loss of implants, infection, and bone loss." Plaintiff's expert also averred that Linkow should have been involved in the surgical process by creating a stent, or surgical guide, to determine the exact location where each implant would be placed.

It should be clear that Linkow's role in plaintiff's restorative dentistry extended far beyond providing collegial advice (*cf. Sawh v Schoen*, 215 AD2d 291 [1995]) to embrace a physician-patient relationship involving primary care and treatment. The record is sufficient to permit a jury to find that Linkow supervised plaintiff's treatment or jointly engaged in her diagnosis or treatment (*Kavanaugh v Nussbaum*, 71 NY2d 535, 546-547 [1988]). "Where physicians actually participate together in diagnosis and treatment, they may each incur a liability for the negligence of the other even though a more active part in the treatment may have been taken by one of them" (*Graddy v New York Med. Coll.*, 19 AD2d 426, 429 [1963], *mot to dismiss appeal denied* 13 NY2d 1175 [1964], citing *Rodgers v Canfield*, 272 Mich 562, 564, 262 NW 409, 410 [1935]). " 'Physicians employed together by the patient, and diagnosing or treating the case together, without withdrawal by, or discharge of, either,

owe the same duty and are jointly liable for any negligence' ''
(*id.*, quoting 70 CJS, Physicians and Surgeons § 54 [c], at 977).

In any event, the primary wrong identified by plaintiff's expert is the unseemly haste with which both dentists proceeded with plaintiff's treatment, without due regard for the complications presented by loose and unstable implants. The record proof permits a conclusion that implant placement and restorative work was undertaken before the maxilla had sufficiently hardened to receive the bridgework prosthesis. Indeed, four loose implants had been removed only shortly before Linkow began to fit plaintiff with a permanent roundhouse. While it was Anastassov who performed the oral surgery, the expert's affidavit affords proof from which a trier of fact could conclude that Linkow departed from the appropriate professional standard of care and contributed to plaintiff's injuries by failing to participate in plaintiff's evaluation and in the formulation of her treatment plan, by proceeding to fit temporary bridgework to implants that had insufficiently healed and by failing to consult with Anastassov to devise a revised treatment plan.