Tom, J.P.
(dissenting). The alleged malpractice at issue on this appeal is the failure to refer plaintiff for a biopsy to determine if two abdominal masses discovered during an ultrasound examination were malignant. The summary judgment motion of those defendants providing obstetrical care was granted in the absence of opposition and the complaint dismissed as against them, leaving only the question of whether Supreme Court erred in denying the companion motion of appellant Elizabeth J. Beautyman.[1] It is asserted that Beautyman owed no duty to her patient because, while fully aware of the masses, she took no action to treat them.
As plaintiff’s primary care physician, Beautyman cannot abdicate responsibility for her patient’s health care. Beautyman concedes that in October 2005 she received, reviewed and *165 incorporated into plaintiffs medical record a copy of the report of Dr. Sherman Lipshitz, a radiologist, who interpreted the ultrasound examination. However, Beautyman failed to follow up by referring plaintiff for appropriate diagnosis and treatment, thereby contributing to injuries resulting from the delay in excising a liposarcoma.
The American Academy of Family Physicians defines “primary care physician” as “a generalist physician who provides definitive care to the undifferentiated patient at the point of first contact and takes continuing responsibility for providing the patient’s care” (AAFP Policies, Primary Care, available at http:// www.aafp.org/online/en/home/policy/policies/p/primarycare.html [definition #3]). The definition continues, inter alia: “The style of primary care practice is such that the personal primary care physician serves as the entry point for substantially all of the patient’s medical and health care needs — not limited by problem origin, organ system, or diagnosis” (id.).
Whether or not the abdominal masses were apparent at the time Beautyman first examined plaintiff in August 2005, Beautyman certainly knew of their existence by the time plaintiff again consulted her in January 2006. The radiologist’s report describes two discrete palpable masses, one in the left anterior upper abdominal wall, and the other in the left axilla. Beauty-man, as plaintiff’s primary care physician, assumed the responsibility to see that her patient’s medical needs were met. Indeed, the affidavit of plaintiffs expert internist states that Beautyman’s failure to reexamine her patient and make a referral for a biopsy deviated from accepted medical practice.
The failure to alert plaintiff to the need to rule out the possibility of a malignancy is particularly egregious under the circumstances because Beautyman’s inaction implied that no further treatment was necessary. This Court has noted that even in the absence of a physician-patient relationship, the failure to disclose a potentially injurious medical condition may constitute ordinary negligence where the person examined is likely to construe silence to mean that he or she is in good health (see McKinney v Bellevue Hosp., 183 AD2d 563, 565 [1992] [differential diagnosis of pyoinflammatory disease or lung neoplasm following pre-employment chest X ray]). As we stated, “The tendency of the average person, in similar circumstances, to interpret . . . silence as an indication of good health is so apparent and the consequence of such reliance so potentially serious that we conclude that the law imposes a duty to disclose” *166 (id. at 566). Because the burden of disclosure is slight, the seriousness of the harm to be avoided warrants departure from the general rule that absent a relationship giving rise to such obligation, no duty to disclose is imposed by law (see Stambovsky v Ackley, 169 AD2d 254 [1991]).
As a bare minimum, the existence of a physician-patient relationship imposes a duty to alert the patient to a potential threat to her health, otherwise unknown to her (see Caracci v State of New York, 203 AD2d 842, 845 [1994] [cause of action for ordinary negligence sustained where health center failed to apprise student of a radiologist’s report indicating an abnormal mass]). Particularly where, as here, a physician has undertaken to provide primary medical care, there is a duty to advise the patient of those conditions known to the physician that pose a threat to the patient’s health so that the patient may make an informed decision whether to seek further treatment (see McKinney, 183 AD2d at 565-566). Furthermore, as the physician primarily responsible for the patient’s care, Beautyman was subject to the additional duty to take such appropriate medical action as might be necessary to diagnose and treat the condition, either personally or by way of referral to a qualified practitioner (see Daugharty v Marshall, 60 AD3d 1219 [2009] [primary care physician liable for failure to (1) diagnose gastrointestinal conditions and (2) refer the patient to a gastroenterologist]).
The cases relied upon by Beautyman in support of dismissal of the complaint are distinguishable in that the patients were known to be undergoing treatment for the injurious condition (Wasserman v Staten Is. Radiological Assoc., 2 AD3d 713 [2003] [radiological group not involved in plaintiffs orthopedic treatment not liable for failure to diagnose nerve condition in her ankle]; Chulla v DiStefano, 242 AD2d 657 [1997], lv dismissed 91 NY2d 921 [1998] [clinic that implanted birth-control device not liable for failure to diagnose breast cancer in a patient being treated by another medical group]; Lipton v Kaye, 214 AD2d 319 [1995] [as a matter of policy, non-treating consultant pathologist under no duty to follow up with treating obstetrician]; Markley v Albany Med. Ctr. Hosp., 163 AD2d 639 [1990] [pediatricians, to whom infant undergoing chemotherapy was referred for general care, not liable for overdose of drug administered during the course of infant’s chemotherapy]; cf. Maggio v Werner, 213 AD2d 883 [1995] [question of fact as to whether patient continued to rely on advice given by her obste *167 trician after she was referred to a surgeon for treatment of breast tumor]). While the general duty of care owed by physicians to their patients “may be limited to those medical functions undertaken by the physician and relied upon by the patient” (Markley, 163 AD2d at 640), actually providing primary care induces the patient to rely on the physician to take action where medically appropriate. Where, as here, a primary care physician neither takes suitable action nor even discusses the condition, the patient will naturally be induced to refrain from seeking treatment, to her obvious detriment (see McKinney, 183 AD2d at 566; Caracci, 203 AD2d at 844). As this Court noted in Lipton, liability is predicated on the effect of a misrepresentation or failure to disclose, which induces “ ‘the person to whom it was made to forego action that might otherwise have been taken for the protection of the plaintiff’ ” (214 AD2d at 321, quoting Eiseman v State of New York, 70 NY2d 175, 187 [1987]).
The majority, seeking to distinguish the Third Department’s ruling in Daugharty, takes the position that the defendant doctor’s duty to refer his patient to a qualified specialist arose only after the passage of many years and over the course of extensive treatment (which did not include the gastric condition at issue). Several points bear emphasis. First, as a simple question of law, the issue is whether the primary care physician’s relationship to the patient gives rise to a duty or not. Either the primary care physician owes a duty to refer the patient to the appropriate specialist or no such duty is imposed by law. From the opposite perspective, either a patient is justified in relying on a primary care physician to provide treatment, advice and, where necessary, referral for treatment of general health-related conditions or, as Beautyman argues, the patient is limited to relying on advice and treatment for only those conditions he or she personally brings to the attention of the practitioner.
Second, the negligence involved in this case is the failure to disclose, or even recognize, the potential threat represented by two “palpable” abdominal masses. While it might be acceptable for a specialist rendering limited and particularized treatment to neglect ruling out a hazardous medical condition outside his area of specialization,[2] no such latitude extends to a physician who assumes responsibility for the general health of the patient. *168 As noted, the expectation that the primary care physician will assume such responsibility arises at the outset from the nature of the physician-patient relationship, not from any long-standing association between doctor and patient.
Third, the majority concludes that Beautyman had no duty to assess the course of treatment provided by other physicians; however, no such treatment was in fact provided. Plaintiff stated that the obstetrical group had decided on a “wait and watch” approach, with the result that they provided no treatment at all. In reality, Beautyman does not allege that she relied on diagnostic actions taken by other physicians but on their very inaction. Had Beautyman taken the minimal step of discussing the radiologist’s report with her patient, it would have been readily apparent that absolutely nothing was being done to determine whether the abdominal masses were malignant. Notably, Beautyman provides no basis for relying on doctors who were providing obstetrical care to render appropriate and necessary services to her patient that would normally be provided by an oncologist or pathologist.
Finally, the duty breached is, in the first instance, that of disclosure — specifically that the two masses (of which both patient and doctor were aware) could not simply be assumed to be benign — and, more broadly, the failure to refer the patient for a biopsy to obtain a definitive diagnosis. As Beautyman conceded in her deposition testimony, physical examination of a mass only offers “clues” as to its malignancy and that “[t]he only way to know for sure would be either a biopsy or an excision and biopsy.” Her omission to make a referral for this procedure was particularly harmful under the circumstances because the patient, faced with a number of doctors who expressed no concern about her condition, relied to her detriment on there being nothing about which she needed to be concerned (see Bradley v St. Charles Hosp., 140 AD2d 403, 404 [1988] [hospital can be held liable for failure to diagnose malignant condition where employee was induced to rely upon the results of an annual physical examination]; cf. Lee v City of New York, 162 AD2d 34, 38-39 [1990], lv denied 78 NY2d 863 [1991]). Significantly, there is no indication in the record why immediate referral for a needle biopsy would have been contraindicated by the course of plaintiff’s pregnancy, or for any other reason. Thus, the failure to refer plaintiff to a qualified specialist “in and of itself, represented a deviation from the applicable standard of care” (Daugharty, 60 AD3d at 1221).
*169 In sum, this is a case where no treating physician exercised due care to determine, by appropriate medical testing, whether a patient’s medical health was threatened by a malignancy. The gravamen of Beautyman’s defense is that she was entitled to rely on the judgment of other treating physicians who saw no need for concern. It should be evident, however, that one doctor’s negligence may not be excused by the inadequate treatment provided by another (see Datiz v Shoob, 71 NY2d 867 [1988]; Ruddy v Nolan, 37 AD3d 694, 695 [2007]). Thus, it is immaterial that other doctors, who received the same radiologist’s report as Beautyman, likewise neglected to take the obvious next step of ordering a needle biopsy. Since there is record evidence that such omission constitutes a departure from the applicable standard of care, there remains a material question of fact precluding summary judgment in favor of Beautyman.
Further, plaintiffs initial visit with Beautyman was on August 4, 2005, for a full physical checkup. At that visit Beautyman had plaintiff disrobe to conduct the examination. Beautyman’s chart for plaintiffs examination on that day showed no masses present. However, plaintiff had a left underarm benign mass that had been observed by other doctors, and documented as early as 1999, raising questions about the examination. Moreover, plaintiff testified that, in the same month she first saw Beautyman, she noticed the abdominal mass to be the size of an egg.
Accordingly, the order should be affirmed.
Saxe, Moskowitz, Manzanet-Daniels, JJ., concur with Catterson, J.; Tom, J.E, dissents in a separate opinion.
Order, Supreme Court, New York County, entered November 22, 2010, reversed, on the law, without costs, and the motion granted. The Clerk is directed to enter judgment accordingly.

. The motion of the plastic surgeon who removed the masses was also denied, but no appeal has been taken.

. Since no appeal has been taken from the dismissal of the complaint as against the physicians who provided obstetrical care and expressed “no concern” about the masses, this issue is not before us.