■ CORINNA CARACCI, Appellant, v STATE OF NEW YORK, Respondent. (Claim No. 81743.) [611 NYS2d 344] —Mikoll, J. P. Appeal from an order of the Court of Claims (Hanifin, J.), entered June 21, 1993, which, upon reconsideration, adhered to its prior decision, inter alia, granting the State's cross motion for summary judgment dismissing the claim.

In August 1987, claimant became a student at the State University of New York College at Oneonta (hereinafter SUCO) in Otsego County. On September 14 of that year claimant visited the Student Health Center at SUCO (hereinafter the Center) where she was examined for chest pain, given some Advil and a prescription, and told to return if she did not feel better. Claimant states that upon returning to the Center that evening in accord with the Center's advice, she found that it was closed; she then called the emergency number posted on the Center door. A person answering the call identified herself as a nurse and advised claimant to go to Aurelia Osborn Fox Memorial Hospital (hereinafter the hospital). The hospital examined her, took tests including a chest X ray, informed her that she had pleurisy, prescribed Motrin and advised her to return if she did not feel better in two or three days. She returned to the hospital the next day and was again informed that she had pleurisy. The hospital prescribed antibiotics and its physician gave her a written one-week excuse from school so she could return to her home on Staten Island for treatment.

The report of the hospital radiologist, dated September 15, 1987, indicated that there was an abnormal mass in claimant's chest and a CT scan was recommended to rule out, *inter alia,* the presence of cancer. This report was forwarded to the Center and placed in claimant's medical record. Claimant visited the Center on March 2, 1988 for a routine sports physical and in February 1989 for treatment of a cold and for another sports physical. She visited the Center again on May 5, 1989 after discovering a lump on the left side of her neck. A radiologist's report of her chest X ray taken on the May 5, 1989 visit noted the likely possibility that claimant had Hodgkin's disease. The physician at the Center then informed her that she possibly had lymphoma or Hodgkin's disease. She returned to her Staten Island home for a biopsy and treatment.

In her claim against the State filed on May 8, 1990, claimant alleges that the Center's failure to inform her of the September 1987 radiology report caused delay in the discovery of her Hodgkin's disease, that the progression of the disease for a further 20 months made it necessary for her to receive chemotherapy treatments as well as radiation therapy, and decreased her chances of surviving. Claimant also moved for leave to file a late notice of claim, which the Court of Claims granted upon a finding that the State would not be substantially prejudiced. A new claim was then filed.

The Court of Claims next granted the State's motion to reargue claimant's application to file a late claim and, upon reargument, adhered to its original decision. The State appealed that order to this Court, contending that the court erred because claimant did not furnish an expert's affidavit of merit. In affirming, we found that a claim based on ordinary negligence was stated as well as one on medical malpractice, which was supported by the radiologist's reports (178 AD2d 876).

Subsequently, claimant moved for partial summary judgment on the issue of liability and the State cross-moved for summary judgment dismissing the claim. The Court of Claims ruled that the medical malpractice claim was precluded by the Statute of Limitations and that the Center staff owed no duty to claimant that would sustain a claim in ordinary negligence because the Center played no part in her treatment. The court then denied claimant's motion, granted the State's cross motion and dismissed the claim. Claimant moved to renew her motion for partial summary judgment but only as to the ordinary negligence claim. The court granted renewal but adhered to its original decision.

On this appeal claimant contends that the Center, even if it was not in a physician-patient relationship with her at the time the radiologist's report was received, still had a duty to inform her of significant medical information which was, or should have been, known by it and which was part of the Center's record on her *(see, Matter of Caracci v State of New York,* 178 AD2d 876, 877, *supra; see also, Miller v Albany Med. Ctr. Hosp.,* 95 AD2d 977, 978). The State counters that although claimant should have been informed of the radiologist's report, it was not the Center's duty to do so.

The State correctly argues that the Center had no duty to inform claimant of the radiologist's report, when it received this report after claimant's first visit to the Center and after she went to the hospital for treatment. In order for liability to arise for failure to disclose information of a significant health condition discovered as a result of a physical conducted under such circumstances, there must be a duty to give the correct information *(Eiseman v State of New York,* 70 NY2d 175, 187) and the nondisclosure must have led the person to whom it was or should have been made to forego action that might otherwise have been taken for the protection of that person *(supra,* at 187; *see also, McKinney v Bellevue Hosp.,* 183 AD2d 563, 565-566). The one possessing the information must know that the person to whom it is given intends to rely and act

upon it *(supra,* at 565-566). Claimant was referred to the hospital on September 15, 1987 to seek further treatment after her initial visit to the Center. The Center did not order the X ray. Claimant was treated by a physician at the hospital and at home on Staten Island. There was no contact between the Center and claimant for several months and claimant was not aware that the radiologist's report was sent to the Center. There appears no reason here for claimant to have relied on the Center's silence about the radiologist's report as an indication that she was in good health.

Claimant could reasonably have relied on the Center's silence, however, after her March 2, 1988 visit for a sports physical as an indication that she was in good health. On that visit claimant, in answer to certain questions, indicated that she was not then being treated by another physician and that she was not then aware of any serious medical conditions. The Center had no indication that the condition revealed in the radiology report was treated by a physician or investigated, and claimant's answers to the questionnaire indicated that she was unaware of the health problem. Thus, a claim based on ordinary negligence has been made out. The State's reliance on *Murphy v Blum* (160 AD2d 914) is misguided. Here, claimant was referred to the Center pursuant to SUCO's own rules and not by an outside entity.

Mercure, Crew III, White and Yesawich Jr., JJ., concur. Ordered that the order is modified, on the law, without costs, by reversing so much thereof as granted the State's cross motion for summary judgment dismissing the ordinary negligence cause of action and denied claimant's motion for partial summary judgment as to said cause of action; cross motion denied and motion granted to that extent, and partial summary judgment awarded to claimant on the ordinary negligence cause of action; and, as so modified, affirmed.