OPINION OF THE COURT
Jane S. Solomon, J.
Having been rebuffed in her earlier negligence and contract claims against the defendant United States Life Insurance Company (US Life), by order of another Justice of this court dismissing her prior complaint against US Life, plaintiff commenced the present action to obtain relief under a tort theory. In this second action, she casts a wider net to bring in additional parties and offers an argument novel to New York law — that a life insurance company, and by extension the inde *899 pendent agents it hires to collect information regarding the applicant’s physical condition, and the broker the applicant engages, each undertakes the duty to disclose to rejected applicants any unfavorable medical data collected by the company in its underwriting function. Failure to disclose, according to her argument, results in tort liability if such disclosure might have warned the rejected applicant of impending harm. Because no such duty exists, the motions for dismissal by all defendants are granted.
This action, couched as one for negligence and wrongful death, is against US Life, Steven Brasner (Brasner), Fabricant & Fabricant, Inc. (Fabricant), Examination Management Services, Inc. (EMSI) and Brett Jensen, who was sued as “John” (Jensen). Plaintiff is Barbara Petrosky, as widow and executrix of decedent Frank Petrosky (Petrosky). She opposes the defendants’ motions, and moves to consolidate this action with the earlier one in which Brasner and Fabricant remain as defendants. Because the defendants’ motions are granted, plaintiffs motion is moot.
BACKGROUND
By an application dated February 3, 1997 Petrosky sought life insurance with US Life through Brasner, an agent then affiliated with Fabricant. On the forms he signed that day, Petrosky claimed good health, denied smoking or other tobacco use, and sought a 20-year term policy with $500,000 coverage, naming his wife as beneficiary. The application form provided that no coverage would be effective unless “a policy is issued * * * and the first premium is paid in full.” Petrosky did not exercise an option for immediate coverage which was described on the application and which required that a payment be made with the application.
In connection with Petrosky’s application, EMSI was designated to conduct medical tests of Petrosky for US Life. The tests were done on February 11, 1997 by Jensen, EMSI’s employee. The tests included blood and urine samples and an electrocardiogram (ECG). Jensen is not a physician. Petrosky authorized the release of the information gathered in the examination to US Life, which received the results on or about February 26, 1997. US Life rejected Petrosky’s application. It contends that it did so because the blood chemistry report indicated that he used tobacco, which he had denied in the application, and that it advised Brasner that the results were unfavorable. On April 2, 1997 Brasner received from US Life a *900 proposed policy for a shorter term and one-half the coverage which was based on “tobacco rates.” Brasner claims to have tried to reach Petrosky thereafter, without success. Plaintiff alleges that Petrosky attempted to reach Brasner on several occasions, but that Brasner was unavailable. Perhaps more importantly, she contends that the defendants knew that a serious heart condition was implicated by the findings of the tests reported to US Life.
On Friday morning, April 11, 1997, Petrosky presented at the emergency room of a hospital near his home complaining of pain from a fall the Sunday before. While there he suffered a fatal heart attack.
THE TWO LAWSUITS
Plaintiffs first lawsuit[1] was initiated against Brasner, Fabricant and US Life on theories of breach of contract on the alleged policy and of negligence in failing timely (“within a reasonable period of time” is the phrase emphasized by her attorney) to issue the policy sought or, in the alternative, to advise Petrosky that the policy applied for was unavailable and arrange for the alternatives which US Life was prepared to offer to him. By a decision dated September 23, 1998, another Justice of this court granted US Life’s motion for summary judgment dismissing this first complaint against it, and denied a request for similar relief by Brasner and Fabricant. That action thereafter was transferred to me.
In this second action, plaintiffs claim is described as “based upon the failure of all the named defendants” to tell Petrosky “that he was suffering from a serious heart condition,” which failure “denied [him] the opportunity to seek an evaluation and ultimately treatment.” By her terms, this action assumes that each defendant had the knowledge the claim imputes to it.
THESE MOTIONS
Pursuant to an order dated November 23, 1998, motions to dismiss the second complaint were converted into motions for summary judgment, and further submissions were made. Accordingly, the following motions are the subject of this decision: (1) motion by US Life to dismiss; (2) cross motion by EMSI and Jensen to dismiss; (3) cross motion by Brasner and Fabricant to dismiss; and (4) cross motion by plaintiff to consolidate both actions (describing this action as one for “negligence and breach of contract”).
*901 Pursuant to CPLR 3211 (a) (4), US Life, Brasner and Fabrican! urge dismissal of the second complaint because a prior action against the parties was pending when the second complaint was filed. This aspect of their motions is not without merit, but the issue of duplicative actions, and the cross motion to consolidate, are moot following the present decision.
1. US Life
US Life further asserts that this action is barred against it under the doctrine of res judicata. The claims against US Life on the first action, including breach of contract and negligence, were dismissed by Justice Shainswit in her September 23, 1998 decision. In that matter, plaintiff alleged that US Life was negligent in the manner it processed Petrosky’s application for insurance, and here the alleged negligence is in failing to inform the decedent of a harmful medical condition. “Afterthoughts or after discoveries however understandable and morally forgivable are generally not enough to create a right to litigate anew.” (Matter of Reilly v Reid, 45 NY2d 24, 28 [1978].) While res judicata arguably provides a strong second basis for dismissing the complaint against US Life, the claims in this action, which apply, in any event, to all of the defendants, are sufficiently distinct as to merit a separate discussion.
To prove negligence, a party must demonstrate the existence of a legal duty owed by the defendant to another, breach of that duty, and injury as a result of that breach. (Akins v Glens Falls City School Dist. , 53 NY2d 325, 332 [1981]; Pulka v Edelman, 40 NY2d 781 [1976]; and see, Palsgraf v Long Is. R. R. Co., 248 NY 339, 342.) In the absence of duty, there is no breach and without a breach there is no liability. (Kimbar v Estis, 1 NY2d 399, 405 [1956].)
“[T]he imposition of duty presents a question of law for the courts * * * resting on policy considerations of whether plaintiffs interests are entitled to legal protection against defendant’s conduct”. (Eiseman v State of New York, 70 NY2d 175, 189-190 [1987].) “Our law does not generally impose a duty to make disclosure, requiring some affirmative misrepresentation before imposing liability”. (McKinney v Bellevue Hosp., 183 AD2d 563, 565 [1st Dept 1992].) A failure to disclose the existence of a known danger may result in liability for negligence where the plaintiff is misled, resulting in an injury. (Eiseman v State of New York, 70 NY2d, at 187; and see, Prosser and Keeton, Torts § 33, at 207 [5th ed 1984].) Such *902 nondisclosure may be the equivalent of a misrepresentation where it is to be expected that another will rely upon the appearance of safety. (Prosser and Keeton, op. cit., at 207.) Liability for nondisclosure arises only where there is a duty to give the correct information. (Eiseman v State of New York, 70 NY2d, at 188.) “ ‘There must be knowledge or its equivalent that the information is desired for a serious purpose; that he to whom it is given intends to rely and act upon it; that if false or erroneous he will because of it be injured in person or property. Finally, the relationship of the parties * * * must be such that * * * the one has the right to rely upon the other for information, and the other giving the information owes a duty to give it with care.’ ” (Supra, at 187-188, citing International Prods. Co. v Erie R. R. Co., 244 NY 331, 338 [1927], cert denied 275 US 527 [1927]; and see, Caracci v State of New York, 203 AD2d 842 [3d Dept 1994].)
Whether there exists a legal duty on the part of a life insurer to disclose adverse medical information to an applicant to whom it rejects coverage appears to be a matter of first impression in New York. Two courts, applying the law of other States in cases involving similar facts (each arising from an insurer’s failure to disclose an applicant’s positive test results for human immunodeficiency virus [HIV]), found that the insurer had no duty to disclose test results to an applicant. (See, Doe v Jackson Natl. Life Ins. Co., 944 F Supp 488 [SD Miss 1995], affd sub nom. Deramus v Jackson Natl. Life Ins. Co., 92 F3d 274 [5th Cir 1996]; Doe v Prudential Ins. Co., 860 F Supp 243 [D Md 1993] .)[2] Plaintiff argues that a third non-New York case, Meinze v Holmes (40 Ohio App 3d 143, 532 NE2d 170 [1987]), imposes a duty on an insurer to disclose adverse medical information arising from an examination. The holding in that case, however, does not apply here. The court there found that the duty arises from an extension of the duty of an examining physician who has assumed a professional and expert position with respect to the insured’s physical condition. The facts here will not support the imposition of that duty because here, unlike in Meinze, there is no examining physician upon whom to impose that duty.
In support of her argument that US Life owed Petrosky a duty to disclose the results of the fluid test and EGG (for the *903 purposes of this motion, the court assumes that the EGG tape and other data could assist a physician in diagnosing heart disease and that the information was known to US Life), plaintiff argues that the failure to disclose information regarding Petrosky’s heart condition is tantamount to a misrepresentation. In McKinney v Bellevue Hosp., the Appellate Division, First Department, held that a physician who conducted a preemployment examination could be liable for ordinary negligence in the absence of a physician-client relationship where the doctor detected a serious medical condition but failed to report it to the employee, who was subsequently hired. (183 AD2d 563, supra.) The McKinney Court stated that “ ‘[t]he causal connection between the wrongful conduct and the resulting damage, essential throughout the law of torts, takes in cases of misrepresentation the form of inducement of the plaintiff to act, or to refrain from acting, to his detriment.’ ” (183 AD2d, supra, at 565.) In McKinney, the employer hired the plaintiff, and its silence regarding the existence of a serious medical condition may have induced him to believe he was in good health and caused him to rely upon the appearance of safety. (183 AD2d, at 565-566.) Here, US Life was solicited by Petrosky who represented himself to be healthy; he applied for insurance, not a medical examination and report; and was not subjected to a physical by a medical doctor. Nothing in the process could have been interpreted as an inducement to forgo medical examination or attention.
Nor is there evidence that Petrosky was induced to act or refrain from acting in monitoring his health in reliance upon his application for insurance, so there is no basis to argue that Petrosky relied on US Life to do anything other than perform the limited function of a life insurance business, i.e., consider applications for life insurance and possibly extend life insurance upon acceptance of such applications. (Doe v Jackson Natl. Life Ins. Co., supra.) The examination was conducted solely for the purpose of determining Petrosky’s insurability under US Life’s underwriting guidelines, and Jensen, the examiner, neither offered nor intended to treat Petrosky. (See, LoDico v Caputi, 129 AD2d 361 [4th Dept 1987], lv denied 71 NY2d 361 [1988].) Thus the relationship of the parties was not such that Petrosky had the right to rely upon US Life to provide information regarding his health status.
In light of the foregoing, US Life owed no duty in this case to disclose to Petrosky the data obtained at the examination, and accordingly the motion to dismiss the complaint as against defendant US Life is granted.
*904 2. EMSI and Jensen
EMSI is an independent entity hired by insurance companies to collect information from insurance applicants to assist insurers in underwriting. Its services are performed solely for the benefit of the insurance companies. Brett Jensen was employed by EMSI, and was directed to collect urine and blood specimens from Petrosky, record his blood pressure and take an EGG on behalf of US Life. When Jensen met Petrosky on February 11, 1997, Petrosky was informed that their meeting concerned his application for life insurance and that he was not there for treatment or evaluation. Jensen sent the specimens and EGG tape (which Jensen is not qualified to read) to a laboratory for analysis. Neither Jensen nor EMSI had any further contact with the material.
The uncontroverted facts show that EMSI and Jensen never possessed the information resulting from the analysis of the specimens and the EGG that plaintiff alleges they were duty-bound to disclose. This alone warrants dismissal of the claim against them. Moreover, as analyzed above, since the examination was conducted solely for the benefit of US Life and not for Petrosky’s benefit, Petrosky could not rely on the examiner to determine his general health. (LoDico v Caputi, 129 AD2d 361, supra.) Finally, plaintiff fails to establish that Petrosky was a third-party beneficiary of the contract between EMSI and US Life such that EMSI owed Petrosky a duty to protect his safety in reporting the data (Palka v Servicemaster Mgt. Servs. Corp., 83 NY2d 579, 587 [1994]), or that EMSI and Jensen affirmatively created the hazardous condition that resulted in Petrosky’s death. (Supra; and see, Eaves Brooks Costume Co. v Y.B.H. Realty Corp., 76 NY2d 220 [1990]; Genen v Metro-North Commuter R. R., 261 AD2d 211 [1st Dept 1999].) Therefore, the motion to dismiss the complaint as against EMSI and Jensen is granted.
3. Fabricant and Brasner
Fabricant and Brasner argue that the present action must be dismissed pursuant to CPLR 3211 (a) (4) because there is another action pending arising from the same alleged wrong. They further claim that they cannot be liable for failing to disclose the results of Petrosky’s physical examination because they never possessed said results. Finally, they join US Life’s argument that they owed no duty to disclose the examination results because the examination was conducted purely for US Life’s underwriting purpose, and not for Petrosky’s benefit.
*905 As in the case with EMSI and Jensen, the uncontroverted evidence shows that Fabricant and Brasner never possessed the information from Petrosky’s examination that plaintiff argues could have warned of his serious heart condition. Petrosky did not authorize US Life to release the examination results to Fabricant and Brasner, and plaintiff offers no evidence that it did. As this action is premised upon the defendants’ alleged failure to disclose the results of the physical examination, plaintiff must establish that Fabricant and Brasner possessed the information before a duty to disclose may be imposed. Moreover, Fabricant’s and Brasner’s alleged lapses in their duty of care in processing Petrosky’s application for life insurance is the subject of the surviving claim in the first action. Accordingly, Fabricant and Brasner’s motion to dismiss also is granted.
Accordingly, it hereby is ordered that the motions for summary judgment of each defendant are granted and the complaint is dismissed.

. Index number 605317/97.

. Under New York law, an insurer’s duty to disclose the results of an HIV test that forms a basis for an underwriting decision is imposed by statute. (Insurance Law § 2611 [c].) Plaintiff does not claim a statutory duty is imposed in the present matter.