STEED FINANCE LDC, Shetland Fund Ltd., Republic Multi–Adviser Arbitrage Investments Limited and Republic Global Hedge Investments Limited, and Creditanstalt A.G., Plaintiffs,

v.

LASER ADVISERS, INC., Michael Smirlock, and Melanie Katzman, Defendants,

Appaloosa Management L.P. and David Tepper, Defendants and Third–Party Plaintiffs,

v.

James River Capital Corp., James River Offshore Management Corp., Kevin M. Brandt, and Paul H. Saunders, Third–Party Defendants.

No. 99 Civ. 4222(BSJ).

United States District Court, S.D. New York.

April 15, 2003.

Peter C. Harrar, Jeffrey G. Smith, Daniel W. Krasner, Wolf, Haldenstein, Adler, Freeman & Herz LLP, New York, NY, for Steed Finance LDC, Shetland Fund Ltd., Creditanstalt AG.

Paul D. Wexler, Peter D. Morgenstern, Bragar, Wexler, Eagel & Morgenstern, LLP, New York, NY, for Republic Multi-Adviser Arbitage Investments Ltd., Republic Global Hedge Investments, Ltd.

William M. Brodsky, Baden Kramer Huffman Brodsky & Go, PC, Jonathan Mazer, Baden Kramer Huffman & Brodsky, PC, New York, NY, for Laser Advisers, Inc., Michael Smirlock.

Paul Vizcarrondo, Jr., Wachtell, Lipton, Rosen & Katz, New York, NY, for Appaloosa Management LP.

Bernice J. Koplin, Schachtel Gerstley, Levine & Koplin, PC, New York, NY, for Melanie Katzman Smirlock.

Kenneth Lawrence Fox, Law Offices of Kenneth L. Fox, Bernice J. Koplin, Schachtel Gerstly Levine & Koplin, PC, Ronald L. Levine, Schachtel, Gerstley, Levine & Koplin, PC, Philadelphia, PA, for Melanie Katzmann.

## OPINION AND ORDER

JONES, District Judge.

This securities action is presently before the Court on the motion of the third-party defendants, James River Capital Corp., James River Offshore Management Corp., Kevin M. Brandt, and Paul H. Saunders, (collectively, the "James River Defendants"), to dismiss the third-party complaint against them for failure to state a claim upon which relief can be granted pursuant to Fed.R.Civ.P. 12(b)(6), and for failure to plead fraud with particularity pursuant to Fed.R.Civ.P. 9(b). The third-party complaint was filed by defendants Appaloosa Management L.P. and David

Tepper (hereinafter "Appaloosa and Tepper") seeking contribution from the James River Defendants in the event that they are ultimately found liable in the main action.[1] For the reasons appearing hereafter, third-party defendants' motion to dismiss is granted.

## I. BACKGROUND [2]

This case arises from the mispricing of Plaintiffs' investment portfolios by defendants Michael Smirlock and LASER Advisers, Inc. between December 1997 and June 1998, allegedly designed to conceal the true performance of Plaintiffs' investments.

Plaintiffs are investors in certain hedge funds to which defendant Appaloosa, and later LASER Advisers, Inc. ("LASER") acted as investment advisor, with defendant Michael Smirlock acting as lead portfolio manager. Defendant and third-party plaintiff Appaloosa is a Delaware limited partnership registered with the Commodity Futures Trading Commission as a commodity pool operator and a commodity trading advisor. Its general partner is Appaloosa Partners Inc., of which defendant and third-party plaintiff David Tepper is President and sole shareholder. Tepper is also one of Appaloosa's limited partners. (TPC ¶ 4). Third-party defendants James River Capital Corporation ("James River") acted as the sponsor of the hedge fund in which plaintiffs invested, and was primarily responsible for organizing the funds and marketing them to investors. Individual third-party defendants

James M. Brandt and Paul H. Saunders are principals of James River and served on the Board of Directors of Steed and Shetland, as did Smirlock.

The underlying litigation began when plaintiffs' Steed Finance Ltd. ("Steed"), an offshore hedge fund formed to serve as a "hub" fund to invest on behalf of other funds, Shetland Fund Ltd., ("Shetland") and three other entities that are alleged to be shareholders of Shetland brought suit against five defendants, LASER, Appaloosa, Michael Smirlock, David Tepper, and Melanie Katzmann, who is Michael Smirlock's wife, alleging that Smirlock, as lead portfolio manager of the hedge funds, mispriced the funds in December 1997 and from February 1998 through May 1998, causing damages to the plaintiffs. Plaintiffs' amended complaint, filed against the same five defendants, contained twenty-four claims alleging violations of Section 10(b) of the Securities Exchange Act of 1934 and Rule 10b–5 promulgated thereunder, common law fraud, negligent misrepresentation, fraud in the inducement, breach of contract, and breach of fiduciary duty.

Defendants Appaloosa and Tepper then moved to dismiss the first amended complaint against them, which the Court denied on January 4, 2001. Appaloosa and Tepper filed their third-party complaint approximately three months later, on April 5, 2001, for contribution from the James River Defendants should Appaloosa and Tepper be found liable to the plaintiffs,

---

**1.** Defendant David Tepper also seeks damages with respect to his claim for aiding and abetting fraud and aiding and abetting breach of a fiduciary duty as a derivative action on behalf of LASER.

**2.** The facts herein are culled from third-party defendants' third-party complaint, plaintiffs' amended complaint, the Shetland Fund Ltd. Offering Memorandum, attached to the La-

velle Aff., Ex. A, the Trakehner Fund Private Placement Memorandum, attached to the Kuster Aff., Ex. B, the Steed Finance Ltd. Investment Advisory Agreement, attached to the Kuster Aff., Ex. C, the Shetland Fund Ltd. Amended and Restated Investment Advisory Agreement, attached to the Kuster Aff., Ex. D, and Appaloosa and Tepper's Mem. in Supp. of Mot. to Dismiss the Am. Compl.

and Tepper brought a claim for damages, on behalf of LASER, for aiding and abetting fraud and breach of fiduciary duties by Smirlock. In their third-party complaint, Appaloosa and Tepper allege that the James River Defendants are liable for violations of Federal securities laws and rules promulgated thereunder, as well as for common law fraud, negligence and breach of fiduciary duties.

### A. The Funds' Beginnings

David Tepper, formerly of Goldman Sachs & Co.'s high yield group, formed Appaloosa as a hedge fund manager. In early 1994, Michael Smirlock was hired by Tepper to establish new hedge funds to trade mortgage-related securities. Smirlock was previously Chief Investment Officer for Goldman Sachs Asset Management. Smirlock created plaintiff Shetland, an offshore hedge fund, as a limited liability corporation incorporated under the laws of the British Virgin Islands.[3] According to its Offering Memorandum, Shetland was formed to invest in "high quality U.S. fixed-income securities, primarily private-label mortgage-securities and governmental agency mortgage-based securities as well as other securities and derivative instruments." (Shetland Offering Mem. at 4).[4] On July 1, 1994, the effective date of its formation, Shetland entered into an Investment Advisory Agreement with Appaloosa and until July 1995, Appaloosa conducted Shetland's investment and trading operations and acted as Shetland's sponsor.

### B. The Entrance of James River

In an effort to expand their hedge fund operations, Tepper and Smirlock began looking for an outside sponsor to market the funds through private placements. (Am. Compl. ¶ 26, TPC ¶ 18) In July 1995, James River Capital Corporation ("James River") became Shetland's sponsor.[5] Pursuant to an Amended and Restated Sponsor Agreement dated July 21, 1995, James River was to receive a management fee "with respect to the Company's Class A Shares equal to 1/6 of 1% (a 2% annual rate) of the month-end Net Asset Value (as defined in the Offering Memorandum) of the Company's Class A Shares" in addition to "an annual incentive fee equal to 5% of any cumulative New Profit with respect to the Company's Class A Shares determined

---

**3.** Plaintiffs Republic Multi–Adviser Arbitrage Investments Limited, ("Arbitrage"), Republic Global Hedge Investments Limited ("Global Hedge"), and Creditanstalt A.G. ("Creditanstalt") are all plaintiffs in this lawsuit because they each owned Shetland Class A common stock before June 1, 1998, and lost money when it was redeemed on July 31, 1998.

**4.** The Court is permitted to consider this, and other documents submitted by affidavit by the James River Defendants because they are incorporated by reference in the third-party complaint and the underlying amended complaint. *See Cortec Indus., Inc. v. Sum Holding, L.P.*, 949 F.2d 42, 48 (2d Cir.1991). Specifically, the Court will consider the following documents: Shetland Offering Memorandum (Lavelle Aff. Ex. A); Trakehner Private Placement Memorandum (Kuster Aff. Ex. B); the Investment Advisory Agreement with Steed (Kuster Aff. Ex. C); and the Amended and

Restated Investment Advisory Agreement with Shetland (Kuster Aff. Ex. D). Although Appaloosa and Tepper dispute the authenticity of the Offering Memorandum for the Shetland Fund LTD, dated July 1, 1995, because the copy attached to the Kuster Affidavit was missing pages, the James River Defendants provided a complete copy of this Offering Memorandum subsequent to this objection. (Lavelle Aff. Ex. A). Consequently, the Court will consider this document.

**5.** James River Offshore, also named as a third-party defendant, was formed at a certain point in time by James River's principals, Saunders and Brandt, as a commodity pool operator and commodity trading advisor to replace James River Capital Corp. as sponsor and commodity pool operator of several funds, including Steed and Shetland. (TPC ¶ 7).

as of the end of each calendar year." (TPC ¶ 16). Prior to July 1995, Shetland had conducted all of its investment and trading operations directly. (Shetland Offering Mem. at 4). However, as of July 1, 1995, Shetland was scheduled to begin conducting its investment and trading activities indirectly through an investment in Steed, a Cayman Islands corporation formed to serve as a "hub" fund to conduct investment trading activities on behalf of certain investment funds advised by Appaloosa. Pursuant to an Amended and Restated Investment Advisory Agreement with Appaloosa effective July 1, 1995, Appaloosa served as the investment advisor to Steed and Shetland, and Smirlock acted as the portfolio manager and executed the trading methods and policies for both Steed and Shetland in exchange for advisory fees. The Board of Directors for Shetland and Steed were identical. Two of James River's principals, Paul Saunders and James Brandt, served on the Board of Directors of Shetland and Steed.

There were several other funds under the "hub" fund, Steed. One such fund was Trakehner Fund L.P. ("Trakehner"), a Delaware limited partnership hedge fund. Trakehner invested all or substantially all of its assets indirectly into Steed. James River served as the General Partner and commodity pool operator of Trakehner, and Appaloosa served as the investment advisor and commodity trading advisor. (Trakehner Offering Mem. at 4). Trakehner limited partnership units were offered through a private placement memorandum starting on August 28, 1995, which was updated on April 5, 1996. Appaloosa was paid a management fee and an incentive fee linked to Trakehner's cumulative "new" profit for each year over the life of the Advisory Agreement. The Trakehner Offering Memorandum stated that the partnership's trading policies were to be executed by Smirlock through Thoroughbred Finance Ltd. and ultimately through Steed, the hub fund.[6]

### C. Tracking the Funds' Progress

The Investment Advisor, Appaloosa, through Smirlock, provided monthly unaudited and annual audited financial statements of Shetland and Steed, as well as the monthly composition of Shetland's portfolio to each shareholder of Shetland. The Trakehner portfolio was similarly valued monthly by Appaloosa, through Smirlock. The Investment Advisory Agreements required Appaloosa to adhere to valuation provisions contained in the Agreements, including the requirement that Appaloosa "value each portfolio security based on quotations received from at least one independent dealer in the security involved." (Steed Advisory Agmt. at ¶ 13). According to plaintiffs' amended complaint, adherence to the valuation provisions was important to Steed, Shetland, and investors in Shetland and Trakehner because each fund monitored the value of its portfolio to determine how Smirlock was performing and to determine whether the fund was bearing the appropriate level of risk and leverage. (Am.Compl.¶ 35).

### D. The Creation of LASER and the Fraud

In August 1997, Appaloosa spun off Smirlock's advisory function with respect to mortgage-related securities to LASER, newly created to serve as manager of both the older funds, such as Shetland, and a new publicly traded real estate investment trust. Smirlock owns 78% of the outstanding shares of LASER, is Chairman of the Board of LASER and was, until July 30, 1998, LASER's Chief Executive Officer. David Tepper owns 22% of the outstanding stock of LASER and is a director. (TPC ¶¶ 5, 20).

---

**6.** Appaloosa acted as the investment advisor    for Thoroughbred as well.

LASER assumed Appaloosa's advisory functions with respect to Shetland and Steed, effective January 1, 1998, pursuant to two Assignment and Assumption Agreements. Also effective in early 1998, Appaloosa's advisory functions to Trakehner were shifted to LASER. During the years that Appaloosa served as investment advisor, the funds performed well. However, conditions in the mortgage-related hedge fund markets became volatile, and Steed began to suffer trading losses in its portfolio in April 1998 through June 1998. Smirlock, however, allegedly mispriced Steed's portfolio in December 1997 and February 1998 through May 1998, and thus Smirlock's April 1998 and May 1998 monthly valuations were inaccurate, causing the funds to report modest profits in those months and concealing their actual losses.

On June 13, 1998, Smirlock advised other members of Steed and Shetland's Board of Directors that mispricings had occurred in the funds portfolios. Shetland notified investors of these mispricings and indicated that Smirlock was responsible. Specifically, according to LASER, in many instances new independent dealer quotations, as required by the Advisory Agreements, were not obtained and Smirlock used out-of-date quotes or concocted the values himself. Smirlock provided incorrect information on Steed's positions to various dealers so that quotes he did obtain from dealers were wrong. As a result of the mispricing, Steed, Shetland and Trakehner had to restate their financial results for April and May 1998 and reported material losses instead of the modest gains previously reported, as well as a material loss for June. In July, Smirlock was forced to relinquish control of LASER and resigned as CEO. LASER was thereafter terminated as the funds' investment advisor.

## II.  DISCUSSION

The Court must accept all allegations in the third-party complaint as true and draw all inferences in favor of Appaloosa and Tepper on this motion to dismiss. *See Grandon v. Merrill Lynch & Co.*, 147 F.3d 184, 188 (2d Cir.1998). The function of the court on a motion to dismiss is merely to test the sufficiency of the complaint. *See Scheuer v. Rhodes*, 416 U.S. 232, 236, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974). Consequently, dismissal for failure to state a claim is warranted only where "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957).

### A.  Claims for Contribution Under the Federal Securities Laws

■ In order to state a viable claim for contribution under the Federal securities laws, a third-party plaintiff "must set forth sufficient allegations in the third-party complaint to demonstrate that the third-party defendant itself violated the federal securities laws." *Advanced Magnetics, Inc. v. Bayfront Partners, Inc.*, No. 92 CIV. 6879, 1998 WL 647167, at *2 (S.D.N.Y. Sept.22, 1998) (citations omitted). Consequently, the third-party plaintiff must allege each and every element of a primary securities fraud violation in order to prevail on a claim for contribution. *See Advanced Magnetics*, 1998 WL 647167, at *2.

The Court will address each of Appaloosa and Tepper's claims for contribution from the James River Defendants for a violation of the securities laws with this principle in mind.

### 1.  Section 10(b) Securities Fraud Claim

Under § 10(b), 15 U.S.C. § 78j(b), and Rule 10b–5, 17 C.F.R. § 240.10b–5(b), "the complaint must allege that in connection

with the purchase or sale of securities, defendant, acting with scienter, either made a false material representation or omitted to disclose material information . . .". *In re Scholastic Corp. Secs. Litig.*, 252 F.3d 63, 69 (2d Cir.2001). Therefore, to state a claim for contribution under § 10(b), scienter must be properly alleged. *See Ernst & Ernst v. Hochfelder*, 425 U.S. 185, 201, 96 S.Ct. 1375, 47 L.Ed.2d 668 (1976). Moreover, Rule 9(b) of the Federal Rules of Civil Procedure provides that, with respect to claims for fraud, including claims for securities fraud, "the circumstances constituting fraud . . . must be stated with particularity," although "malice, intent, knowledge, and other conditions of mind of a person may be averred generally." *See Cromer Finance Ltd. v. Berger*, 137 F.Supp.2d 452, 468 (S.D.N.Y. 2001) (internal quotations and citation omitted). The Securities Reform Act requires that plaintiffs "state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind." 15 U.S.C. § 78u–4(b)(2) (2003). A plaintiff in the Second Circuit may plead scienter either by "(a) alleging facts demonstrating that defendants had both the motive and an opportunity to commit fraud or (b) otherwise alleging facts to show strong circumstantial evidence of defendants' conscious misbehavior or recklessness." *In re Scholastic Corp. Secs. Litig.*, 252 F.3d at 74.

■ The James River Defendants contend that Appaloosa and Tepper's § 10(b) and Rule 10b–5 claim for contribution should be dismissed because, among other reasons, Appaloosa and Tepper fail to adequately allege facts establishing the requisite scienter. For their part, Appaloosa and Tepper contend that they have satisfied both methods provided by the Second Circuit for adequately pleading scienter. First, they argue that the James River Defendants had both a motive and opportunity to misprice the investment portfol-

ios, the alleged fraud at issue in the underlying action, because "[t]he James River [D]efendants' fees pursuant to their various sponsorship agreements with the funds were based on the net asset value and profitability of the funds portfolios" such that "[t]o the extent that mispricings improperly inflated the reported value of the portfolios, James River benefitted from and had a direct motive to commit the alleged fraud." (Appaloosa and Tepper's Opp. at 10, hereinafter "Opp.", citing TPC ¶¶ 16, 17, 43). However, the Second Circuit has held that "the existence, without more, of executive compensation dependent upon stock value does not give rise to a strong inference of scienter." *Acito v. IMCERA Group, Inc.*, 47 F.3d 47, 54 (2d Cir.1995). Here, Appaloosa and Tepper's suggestion that the James River Defendants had a motive to commit the fraud because the better the funds' performance, the higher their fees, is analogous to the argument previously rejected that an executive has a motive to commit fraud merely because his compensation is tied to stock price. Consequently, the Court finds that this alone cannot provide the requisite motive.

Likewise Appaloosa and Tepper's contention that "[t]he James River [D]efendants were motivated to conceal the mispricings to avoid termination of their various sponsorship and management agreements with the funds," (Opp. at 10, citing TPC ¶ 43) and the desire to "continue to market and sell the funds' shares through June 1998 [when they would receive professional fees]" (Opp. at 10, citing TPC ¶ 34) fails to adequately establish a motive to commit fraud. *See Shields v. Citytrust Bancorp, Inc.*, 25 F.3d 1124, 1130 (2d Cir.1994) (holding that "a plaintiff must do more than merely charge that executives aim to prolong the benefits of the positions they hold."), citing *Ferber v. Travelers Corp.*,

785 F.Supp. 1101, 1107 (D.Conn.1991); *Duncan v. Pencer,* No. 94 Civ. 0321, 1996 WL 19043, at *9 (S.D.N.Y. Jan. 18, 1996) (holding that "financial gain from compensation for professional services is not a sufficient motive for purposes of pleading scienter."). Indeed, the Second Circuit has made clear that a proper allegation of "[m]otive would entail concrete benefits that could be realized by one or more of the false statements and wrongful nondisclosures alleged." *Shields,* 25 F.3d at 1130. The Court finds that Appaloosa and Tepper have not adequately alleged that the James River Defendants had a motive to commit fraud.

■ Moreover, even if Appaloosa and Tepper could establish that the James River Defendants had a motive to commit fraud, they have not properly alleged they had an opportunity to commit fraud. An allegation of an opportunity to commit fraud must include "the means and likely prospect of achieving concrete benefits by the means alleged." *Novak v. Kasaks,* 216 F.3d 300, 307 (2d Cir.2000). Appaloosa and Tepper provide nothing more than the conclusory statement that the James River Defendants "had ample opportunity to commit the alleged fraud either directly or through Smirlock as the funds' portfolio manager," (TPC ¶ 43), merely by virtue of their "pervasive control and domination of the Funds." (TPC ¶ 36). Further, Appaloosa and Tepper's attempt to cast the James River Defendants in a dominant role with respect to the mispricing, the fraud at issue, is belied by other facts provided in their third-party complaint, including the fact that the James River Defendants delegated responsibility for investment decisions to the investment advisor, Appaloosa and LASER, and from other documents governing the relationship between the parties to this lawsuit. (TPC ¶ 36). As the Court will discuss in more detail regard-

ing breach of fiduciary duty and negligence, it is clear from the Shetland Offering Memorandum, the Trakehner Private Placement Memorandum, and the Steed and Shetland Advisory Agreements that neither James River, the corporation, nor the individual defendants as members of the board of Steed and Shetland, had any opportunity to perform the valuation function at issue with respect to the mispricing. (Shetland Off. Mem. at 18, 17, 22; Trakehner Private Placement Mem. at 19; Steed Inv. Adv. Agmt. at 2; Shetland Restated Inv. Agmt. at 2–3). Instead, the responsibility for investing and valuing the funds was placed exclusively upon Appaloosa, and later, LASER. Consequently, the Court finds that Appaloosa and Tepper have failed to adequately allege that the James River Defendants had the opportunity to commit the fraud at issue in the underlying litigation.

Appaloosa and Tepper next contend that they have alleged sufficient facts to show strong circumstantial evidence of the James River Defendants' conscious misbehavior or recklessness. Specifically, Appaloosa and Tepper contend that "[t]he James River [D]efendants had actual knowledge of the alleged mispricings or acted with reckless disregard for the truth in that they ignored the obvious warning signs of the alleged mispricings by Smirlock of the funds portfolios." The examples of such "obvious warning signs" provided by Appaloosa and Tepper are: "significant inconsistencies in markets in which Smirlock invested for the funds; significant discrepancies in securities valuations from different dealers for the funds' portfolio securities; and the substitution of the prices of more valuable securities for those of less valuable securities in the funds' portfolio valuations." As further support for their allegation of conscious misbehavior or recklessness, Appaloosa and Tepper contend that the James

River Defendants "failed to institute any meaningful systems of internal controls over Smirlock's actions despite their ultimate responsibility for all aspects of the funds' operations." (TPC ¶ 36).

■ Courts in this circuit have held that "where motive and opportunity do not exist, the strength of the circumstantial allegations [regarding fraudulent intent] must be correspondingly greater." *Hart v. Internet Wire, Inc.*, 145 F.Supp.2d 360, 367 (S.D.N.Y.2001) (internal quotations and citations omitted). The Court finds that Appaloosa and Tepper have provided scant specificity about the facts on which their beliefs are based, and consequently they fail to satisfy the requirements of Rule 9(b). *See* Fed.R.Civ.P. 9(b) (where fraud has been alleged, "the circumstances constituting fraud ... shall be stated with particularity."); *Ross v. A.H. Robins Co.*, 607 F.2d 545, 558–59 (2d Cir.1979) (holding scienter not adequately alleged where the complaint lacked sufficient specificity as to facts regarding how and when defendants received information which they allegedly recklessly ignored.); *Feasby v. Industri– Matematik Int'l Corp.*, No. 99 CIV. 8761, 2000 WL 977673, at *6 (S.D.N.Y. July 17, 2000) (holding that scienter had not adequately been pled where the plaintiffs provided "none of the required facts underlying the complaint's allegations as to the information that was supposedly available to the individual defendants"). The Court finds that here, the facts alleged in the third-party complaint are not specific enough to give rise to a "strong inference" of intent to deceive. Consequently, the Court grants the James River Defendants' motion to dismiss the § 10(b) and Rule 10b–5 claim.

### 2. Section 20(a) Liability

To state a claim under § 20(a) of the Securities Exchange Act of 1934, as amended, 15 U.S.C. § 78t(a)(2003), for control person liability, a plaintiff "must show a primary violation by the controlled person and control of the primary violator by the targeted defendant, ... and show that the controlling person was in some meaningful sense a culpable participant in the fraud perpetrated by the controlled person." *S.E.C. v. First Jersey Secs., Inc.*, 101 F.3d 1450, 1472 (2d Cir.1996) (citations and quotations omitted). The Second Circuit has made clear that particular culpability is a required element of a § 20(a) claim. *See Boguslavsky v. Kaplan*, 159 F.3d 715, 720 (2d Cir.1998) (stating that "a determination of § 20(a) liability requires an individualized determination of a ... defendant's particular culpability.") Consequently, for the reasons discussed above with respect to Appaloosa and Tepper's inadequate allegation of scienter, the § 20(a) claim must be dismissed. *See Mishkin v. Ageloff*, 97 Civ. 2690, 1998 WL 651065, at *26 (S.D.N.Y. Sept.23, 1998) (dismissing § 20(a) claim where the plaintiff failed to provide particularized facts regarding what the defendant is alleged to have done and when he did it).

### 3. Section 12(a)(2) Liability

Section 12(a)(2) of the Securities Act of 1933, as amended, 15 U.S.C. § 77*l*(a)(2)(2003), provides that any person who "offers or sells a security ... by means of a prospectus or oral communication" that contains a materially false statement or that omits a material fact necessary to make the statement not misleading, in light of the circumstances under which they were made, shall be liable to any "person purchasing such security from him." 15 U.S.C. § 77*l*(a)(2)(2003). Except for scienter, the elements of a cause of action under § 12(a)(2) are the same as those for a § 10(b) cause of action. *See Goodridge v. Harvey Group, Inc.*, 778 F.Supp. 115, 129 (S.D.N.Y.1991).

■ The James River Defendants contend that because plaintiffs have not brought a § 12(a)(2) claim in their amended complaint, Appaloosa and Tepper may not seek contribution from the James River Defendants with respect to that claim. The Court agrees. Rule 14(a) of the Federal Rules of Civil Procedure provides that a defendant may bring a third-party into a lawsuit "who is or may be liable to the third-party plaintiff for all or part of the plaintiff's claim against that third-party plaintiff." It is clear that a claim may not be brought against a third-party defendant unless it is based on the plaintiff's claim against the defendant. *See Kenneth Leventhal & Co. v. Joyner Wholesale Co.*, 736 F.2d 29, 31–32 (2d Cir.1984); *Johnson v. Rank*, 110 F.R.D. 99, 101 (N.D.Cal.1986). Here, the plaintiffs' amended complaint alleges that the plaintiffs were the victims of a fraudulent scheme whereby Appaloosa, Tepper, and LASER, through Smirlock, mispriced the value of Steed and Shetland's investments which caused Steed, on behalf of itself and other Funds (such as Shetland) to make certain decisions it would not have otherwise made, for example it caused Steed and Shetland to continue its investment advisory contracts with the defendants. These allegations do not relate to Appaloosa and Tepper's § 12(a)(2) claim regarding misstatements in the Shetland Offering Memorandum dated February 1, 1998. (TPC ¶ 49). Indeed, an entirely different class of plaintiffs would be injured by the allegation that there were mispricings in the Shetland Offering Memorandum, i.e., those plaintiff's who invested in Shetland based upon the Offering Memorandum containing the false statements. It is clear that Appaloosa and Tepper cannot bring a claim for contribution based on misrepresentations in the Offering Memorandum not alleged to have caused any injury upon which the plaintiffs are suing Appaloosa and Tepper. Consequently, Appaloosa

and Tepper's claim under § 12(a)(2) is dismissed.

### 4. Joint Participation

The James River Defendants also argue, as an additional ground for dismissal of Appaloosa and Tepper's securities fraud claims, that Appaloosa and Tepper have not adequately alleged "joint participation" in the fraud as is required for all claims for contribution arising under the securities law. *See Fromer v. Yogel*, 50 F.Supp.2d 227, 234 (S.D.N.Y.1999). Specifically, they contend that because Appaloosa and Tepper have failed to allege that the James River Defendants committed any tort or had any knowledge of Smirlock's misconduct, the James River Defendants could not have been "joint participants" in the fraud, and thus all claims for contribution under the Federal securities laws must be dismissed.

It is clear that claims for contribution under the Federal securities laws are only permitted among "joint tortfeasors". *See, e.g., Fromer*, 50 F.Supp.2d at 234; *In re Leslie Fay Cos. Secs. Litig.*, 918 F.Supp. 749, 756 (S.D.N.Y.1996). However, with regard to securities fraud cases, courts in this Circuit have disagreed regarding whether contribution among joint tortfeasors is limited to "joint participants" in the fraud, or whether contribution is available among independent tortfeasors, as long as there is concurrent liability among the independent tortfeasors. *Compare Advanced Magnetics, Inc. v. Bayfront Partners, Inc.*, No. 92 CIV. 6879, 1998 WL 647167, at *2 (S.D.N.Y. Sept.22, 1998), *and The Stratton Group v. Sprayregen*, 466 F.Supp. 1180 (S.D.N.Y.1979), *with In re Del–Val Corp. Secs. Lit.*, 868 F.Supp. 547 (S.D.N.Y.1994), *and Ades v. Deloitte & Touche*, 1993 WL 362364, at *15 (S.D.N.Y. Sept.17, 1993). The Second Circuit has not yet ruled on this issue. *See Kenneth*

*Leventhal & Co. v. Joyner Wholesale Co.,* 736 F.2d 29, 31 n. 1 (2d Cir.1984) (stating that it would not reach the issue of whether joint participation is required for contribution for claims sounded in securities fraud).

■ This Court agrees with the majority of courts in this jurisdiction that hold that with respect to claims for fraud under the Federal securities laws, contribution among joint tortfeasors requires joint participation in the fraud. *See Fromer v. Yogel,* 50 F.Supp.2d at 236 (stating that "[t]he majority view appears to be that contribution among joint tortfeasors is limited to 'joint participants' in the fraud alleged by the plaintiff."). Thus, in order to adequately state a claim for contribution, Appaloosa and Tepper must claim that the James River Defendants knowingly acted jointly with the defendants to injure the plaintiffs, which they failed to do in their third-party complaint.[7]

### B. Common Law Claims for Contribution [8]

### 1. Common Law Fraud

The elements of common law fraud in New York are "essentially the same as those which must be alleged in order to establish a claim under Section 10(b) and Rule 10b–5." *Pits, Ltd. v. American Express Bank Int'l,* 911 F.Supp. 710, 719 (S.D.N.Y.1996). Therefore, the claim for common law fraud is dismissed for failure to adequately plead scienter.

### 2. Aiding and Abetting Fraud and Aiding and Abetting Breach of Fiduciary Duty

Under New York law, a claim for aiding and abetting liability requires: "(1) the existence of a fraud; (2) defendant's knowledge of the fraud; and (3) that the defendant provided substantial assistance to advance the fraud's commission." *Cromer Finance Ltd. v. Berger,* 137 F.Supp.2d 452, 470 (S.D.N.Y.2001), citing *Wight v. Bankamerica Corp.,* 219 F.3d 79, 91 (2d Cir.2000). Further, to state a claim for aiding and abetting a breach of a fiduciary duty under New York law, a plaintiff must allege facts establishing "(1) a breach by a fiduciary of obligations to another, and (2) that the defendant knowingly induced or participated in the breach." *Cromer Finance Ltd.,* 137 F.Supp.2d at 470, citing *Wight v. Bankamerica Corp.,* 219 F.3d 79, 91 (2d Cir.2000).

Consequently, Tepper's claim for damages against the James River Defendants for aiding and abetting fraud and for aiding and abetting a breach of fiduciary duty, as discussed above, must be dismissed for failure to adequately allege knowledge of the fraud. *See Bank Brussels Lambert v. Credit Lyonnais (Suisse), S.A.,* No. 93 Civ. 6876, 2000 WL 1694322, at *2 n. 3 (S.D.N.Y. Nov.13, 2000) (noting that " 'actual knowledge is required to impose liability on an aider and abettor under New York law.' "), quoting *Kolbeck v. LIT America, Inc.,* 939 F.Supp. 240, 246 (S.D.N.Y.1995).

---

**7.** It must be noted that at this point, whether or not the Court holds that a claim for contribution requires that the James River Defendants knowingly acted jointly with the defendants to injure the plaintiff, courts are in agreement that all parties must have knowingly committed fraud. Because the Court has previously found that Appaloosa and Tepper have not adequately alleged scienter, this is merely an alternative ground for dismissal.

**8.** The parties appear to agree that New York law applies to the common law claims in this action. Consequently, the Court will apply New York law. *See Int'l Bus. Machines Corp. v. Liberty Mut. Fire Ins. Co.,* 303 F.3d 419, 423 (2d Cir.2002).

### 3. Breach of Fiduciary Duty and Negligence

Appaloosa and Tepper contend that James River, "as the Funds' sponsors and operators ... owed a special duty of care to the Funds investors ... [and] owed plaintiffs the highest duties of care and loyalty," (TPC ¶¶ 60, 63), which was breached, either through negligence, intentional, or reckless conduct, when the James River Defendants communicated misleading valuations of plaintiffs' investment portfolios, failed to keep adequate records of the valuation data and failed to disclose LASER's inadequate record-keeping, failed to establish and maintain an adequate system of internal controls, and failed to properly supervise plaintiffs' investment advisor, Smirlock and LASER. (TPC ¶ 63).

Initially, the Court notes that the analysis with respect to the common law claims at issue in the third-party complaint differs from that under the Federal securities laws because under New York law, claims for contribution may be asserted "between two or more persons who are subject to liability for the same personal injury, injury to property or wrongful death." N.Y. C.P.L.R. § 1401 (McKinney's 2003). New York courts hold that "contribution is available whether or not the culpable parties are allegedly liable for the injury under the same or different theories." *Raquet v. Braun*, 90 N.Y.2d 177, 183, 659 N.Y.S.2d 237, 681 N.E.2d 404 (1997) (quotations and citations omitted). Furthermore, contribution "may be invoked against concurrent, successive, independent, alternative and even intentional tortfeasors." *Raquet*, 90 N.Y.2d at 183, 659 N.Y.S.2d 237, 681 N.E.2d 404.

The James River Defendants contend that the claims for negligence and breach of fiduciary duty must be dismissed because all duties relevant to the third-party complaint which they owed, i.e., the investment and valuation duties, are based in contract and were delegated to Appaloosa, and then LASER, by the corresponding Advisory Agreements. Indeed, Appaloosa and Tepper themselves, in their third-party complaint concede that the James River Defendants "delegated to Smirlock full discretion over trading and pricing decisions regarding the Funds' investments," and that "during [the relevant period] Smirlock and LASER managed the Funds' portfolios, conducted all the trades, made all the investment decisions, obtained valuations of the portfolios' securities and kept the pricing records." (TPC ¶¶ 63, 12). Further, it is clear from documents attached by affidavit to this motion to dismiss that Steed and Shetland relied exclusively on the investment advisor, Appaloosa, Smirlock and LASER, for management of its investment portfolio. *See, e.g.*, Shetland Off. Mem. at 18.

■ Under New York law, it is clear that a fiduciary duty arises "when one [person] is under a duty to act for or to give advice for the benefit of another upon matters within the scope of the relation." *Flickinger v. Harold C. Brown & Co.*, 947 F.2d 595, 599 (2d Cir.1991) (citations and internal quotations omitted). New York courts have held, in the broker-customer context, which the Court finds analogous to James River's role as sponsor, that "[t]he fiduciary obligation between a broker and customer under New York law is limited to affairs entrusted to the broker," thus, "[i]n the absence of discretionary trading authority delegated by the customer to the broker ... a broker does not owe a general fiduciary duty to his client." *Bissell v. Merrill Lynch & Co.*, 937 F.Supp. 237, 246 (S.D.N.Y.1996). Here, as clearly disclosed in the Shetland Offering Memorandum, the James River Defendants "relie[d] exclusively on the Advisor for the management of its investment port-

folio," and had no practical ability to supervise the investment management, and thus the James River Defendants could not have breached any fiduciary duty to the plaintiffs. (Shetland Off. Mem. at 18, 17, 22). Contribution is accordingly unavailable with respect to this claim.

 Further, Appaloosa and Tepper's claim for common law negligence against the James River Defendants must similarly be dismissed. It is clear that under New York law, a claim for negligence requires that the defendant owe a duty to the plaintiff. *See Palsgraf v. Long Island R.R. Co.*, 248 N.Y. 339, 342, 162 N.E. 99 (1928). Further, where a party has not assumed a professional or expert position establishing a duty with respect to the claimed breach, no such duty exists. *See Petrosky v. Brasner*, 181 Misc.2d 897, 695 N.Y.S.2d 281, 285 (1999), *aff'd*, 279 A.D.2d 75, 718 N.Y.S.2d 340 (1st Dep't 2001) (holding that defendant insurance company could not be held liable in negligence to a plaintiff for failure to disclose the insured's medical condition where defendant insurance company had not "assumed a professional and expert position with respect to the insured's physical condition."). Therefore, Tepper and Appaloosa's claim for negligence must be dismissed because they have failed to allege that the James River Defendants owed any duty with respect to the mispricing at issue in the plaintiffs' amended complaint.[9]

## III. CONCLUSION

For the reasons discussed above, the motion to dismiss the third-party complaint by the James River Defendants is granted. That complaint is dismissed without prejudice, and with leave to replead within 20 days of this order.

**SO ORDERED:**

---

**9.** Any allegation that the James River Defendants did in fact have some responsibility for the investment and valuation of the funds asserted in the third-party complaint is entirely conclusory, unsupported by any facts, and belied by the various documents incorporated by reference. More is required, even on a motion to dismiss. *See Kern v. City of Rochester*, 93 F.3d 38, 44 (2d Cir.1996).